LAWRENCE SOLOMON, Appellant, v STATE OF NEW YORK, Respondent.

First Department, May 16, 1989

### APPEARANCES OF COUNSEL

*Gary E. Divis* of counsel *(Gamliel & Gendelman,* attorneys), for appellant.

*Dennis Hurley* of counsel *(Peter J. Dooley* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

Ross, J.

This appeal presents us with the issue of whether a claimant's notice of claim, which was filed pursuant to Court of Claims Act § 8-b, to recover damages for unjust conviction and imprisonment, states a cause of action.

An "action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement" *(Broughton v State of New York,* 37 NY2d 451, 456 [1975], *cert denied sub nom. Schanbarger v Kellogg,* 423 US 929 [1975]).

Prior to 1984, in New York, relief for a person, who had been unjustly convicted and imprisoned, was usually "limited to the common law torts of malicious prosecution and false imprisonment, special legislative action, and a claim for damages following a gubernatorial pardon" (1984 Report of NY Law Rev Commn [Commission Report], at 44).

Due to widespread public dissatisfaction with this limited relief afforded victims of unjust convictions and imprisonment (Note, *A Uniform Approach To New York State Liability For Wrongful Imprisonment: A Statutory Model,* 49 Albany L Rev 201 [1984]), the Legislature enacted (L 1984, ch 1009, § 2) Court of Claims Act § 8-b, effective December 21, 1984, and that legislation is popularly known as "The Unjust Conviction and Imprisonment Act of 1984". Its purpose is to enable "those innocent persons who can demonstrate by clear and convincing evidence that they were unjustly convicted and imprisoned * * * to recover damages against the state" (Court of Claims Act § 8-b [1]).

The clear and convincing evidence standard, which must be met by a claimant to make out a claim, pursuant to Court of Claims Act § 8-b, is significant, since it "is a higher, more demanding standard than the preponderance standard" *(Rossi v Hartford Fire Ins. Co.,* 103 AD2d 771 [1984]). Furthermore, the clear and convincing "standard serves to 'impress the factfinder with the importance of the decision' *(Addington v Texas,* 441 US 418, 427 * * *)" *(Matter of Storar,* 52 NY2d 363, 379 [1981]). Finally, clear and convincing evidence means evidence that is neither equivocal nor open to opposing presumptions *(Backer Mgt. Corp. v Acme Quilting,* 46 NY2d 211, 220 [1978]; Fisch, New York Evidence § 1090 [2d ed 1977]).

Pursuant to the provisions of Court of Claims Act § 8-b, on or about December 18, 1986, Mr. Lawrence Solomon (claimant)

commenced an action, by filing a notice of claim (claim) in the Court of Claims, to recover damages, in the amount of $10 million, against the State of New York (State), based upon his allegedly unjust conviction and imprisonment. This claim alleges, in substance, as follows: on March 11, 1977, under Bronx County indictment number 759/1976, the claimant was convicted, after a jury trial, of the crime of a criminal sale of a controlled substance in the second degree (Penal Law § 220.41), which is a class A-II felony, and sentenced to an indeterminate prison term of six years to life; thereafter, by order, dated May 3, 1979, we unanimously reversed his conviction, and remanded for a new trial *(People v Solomon,* 70 AD2d 516 [1st Dept 1979]); subsequently, upon remand to the Bronx Supreme Court (Stanley Parness, J.), after a nonjury trial, on August 28, 1980, Justice Parness found claimant not guilty; pursuant to the sentence he received, as a result of his conviction on March 11, 1977, claimant was allegedly unjustly imprisoned in various correctional facilities of the State for the period from March 11, 1977 until May 3, 1979, which was, as mentioned *supra,* the date of the reversal of his conviction; and claimant did not by his own conduct cause his allegedly unjust conviction.

Following the joinder of issue, in March 1987, claimant moved for partial summary judgment on the issue of liability. In response, the State opposed, and sought to dismiss the claim. The Court of Claims denied the claimant's motion, and dismissed the claim.

Court of Claims Act § 8-b (3) and (4) state, in pertinent part, as follows:

"3. In order to present the claim for unjust conviction and imprisonment, claimant must establish by documentary evidence that:

"(a) he has been convicted of one or more felonies * * * against the state and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and

"(b) * * * (ii) his judgment of conviction was reversed * * * and * * * if a new trial was ordered * * * he was found not guilty at the new trial * * *

"(c) his claim is not time-barred by the provisions of subdivision seven of this section.

"4. The claim shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in

proving that (a) he did not commit any of the acts charged in the accusatory instrument * * * and (b) he did not by his own conduct cause or bring about his conviction. The claim shall be verified by the claimant".

When we apply the requirements of Court of Claims Act § 8-b (3) to the claim, we find that claimant has satisfied those requirements, since he had provided documentary evidence, which establishes his conviction of a felony, he has served part of the sentence imposed by that conviction, the reversal of the conviction, he was found not guilty at the new trial, and the claim is not time barred.

The degree of specificity that a claim must contain in order to satisfy the requirements of Court of Claims Act § 8-b (4), depends on the nature of the particular claim. In other words, the allegations in the claim must be of such character that, if believed, they would clearly and convincingly establish the elements of the claim, so as to set forth a cause of action (Dozier v State of New York, 134 AD2d 759 [1987]).

In his claim, claimant makes reference to excerpts of testimonial and documentary evidence from the first trial, which he contends establish that he did not commit the acts charged in the accusatory instrument. This evidence is summarized, as follows:

At the first trial, the People's case against the claimant for the sale of heroin consisted primarily of the testimony of Messrs. Angel Perez and Privette. While Mr. Perez was a police informer and had been convicted of larceny and narcotics possession crimes, Mr. Privette (Officer Privette) was a special agent of the New York Drug Enforcement Task Force, and he worked as an undercover officer.

Officer Privette testified that he met Mr. Perez in October 1975, after Mr. Perez' arrest on Federal and State narcotics charges. Following this meeting, Officer Privette testified that, on November 26, 1975, Mr. Perez took him to claimant's apartment which was located at 3326 Fish Avenue, Bronx County.

After being introduced to claimant, Officer Privette testified that they discussed drug transactions, and claimant offered to sell Officer Privette an ounce of heroin for $1,300. Furthermore, Officer Privette testified that claimant made a phone call from the apartment to confirm the price and the time the transaction was to take place. Although Officer Privette testified he was sure that he had heard claimant's end of this

telephone conversation, Officer Privette's testimony was contradicted, both by the testimony of Mr. Perez and claimant, and also by New York Telephone Company records, which indicated that claimant's telephone was disconnected at that time.

According to Officer Privette's testimony, the drug purchase from claimant took place on December 15, 1975. Furthermore, Officer Privette testified that, when he arrived at claimant's apartment on that date, he found claimant and Mr. Perez there. Moreover, Officer Privette testified that, without saying what it was for, he placed $1,500 on a table in the apartment. Also, Officer Privette testified that, at the time he placed the money on the table, claimant was not in the room, since he was getting dressed. Thereafter, Officer Privette testified that a fully dressed claimant returned to that room, picked up the money, and then Officer Privette, claimant, and Mr. Perez drove to 2176 Grand Avenue in Bronx County, to pick up the heroin.

Finally, Officer Privette testified that, at the Grand Avenue location, claimant handed Officer Privette a small brown bag as he exited the car.

Officer Privette's trial testimony, about the alleged transfer of the narcotics from claimant to him, was contradicted by his own investigation report, which was made two days after the incident, his testimony at the pretrial hearing, his answers on re-cross-examination, and the testimony of Mr. Perez.

At the trial, claimant testified in his own behalf. In substance, claimant testified as follows: he had never been convicted of a crime; and in 1974, he met Mr. Perez, who had a garage. Furthermore, claimant testified that, in November 1975, Mr. Perez introduced him to Officer Privette, who asked him if he would like to buy drugs for Mr. Perez and Officer Privette, and the claimant answered that he could not do so, since he had no connections in the neighborhood. Moreover, the claimant testified that, on December 15, 1975, Mr. Perez came to claimant's apartment, and claimant agreed to sell his car to Mr. Perez for $1,500 in cash; then Mr. Perez left to make a telephone call and returned to the apartment; and about 45 minutes later, Officer Privette arrived. Moreover, claimant testified that, while he was out of the room, someone put $1,500 on the table; when he came back into the room, claimant picked up the money and left to dress; and thereafter, he signed over the car's registration to Mr. Perez. During

the trial, it was established that the claimant's car was registered in Mr. Perez' name on March 10, 1976. Also, claimant testified that Officer Privette drove Mr. Perez and claimant to 2176 Grand Avenue, where claimant picked up his child, and then Officer Privette drove claimant home. Finally, claimant testified that he never sold drugs to Officer Privette.

As mentioned *supra,* after claimant's conviction, we reversed and remanded for a new trial. In our memorandum, we stated *(People v Solomon, supra,* 70 AD2d, at 516), in pertinent part, that: "Initially, it is noted that the record herein presented a 'close' case on the issue of defendant's guilt. Contributing to this fact are the following, *inter alia:* Special Agent Privette paid $1,500 for one ounce of heroin, yet the contraband weighed only one third of an ounce; the informer Perez was not searched by Privette on December 15, 1975, the date of the narcotic transaction, and the informer had a patent self-interest in becoming a successful informer; Privette did not see defendant drop the bag containing the narcotic into the front seat; and Privette claimed that defendant made several telephone calls to arrange for the sale on November 26, 1975, but telephone company records confirm defendant's trial testimony that his phone was disconnected at this time. Under these circumstances, we view the prosecutor's summation as so unfair as to require a new trial".

Following our reversal, as mentioned *supra,* a Trial Justice, after a bench trial, found claimant not guilty. In his decision, which is appended as exhibit F to the claim, the Trial Justice stated:

"The inconsistencies which were apparent to the appellate division were apparent to this court * * *

"Obviously, something happened. Money was exchanged, however, there are so many factors in this case which puzzle the court. The short weight. The significant short weight here. The telephone call from the phone which was obviously not in use at this particular point. An informant who at least testified on the first trial, not before the court.

"I realize the prior testimony is submitted but really it doesn't have the same effect as testimony in the court.

"Under all the circumstances in the case * * * I find the defendant not guilty".

Our examination of Court of Claims Act § 8-b plainly indicates that the legislative intent, in requiring a claimant to submit detailed pleadings, is for the purpose of allowing

meritless proceedings to be rejected as early in the proceeding as possible *(see,* Commission Report, at 72-74).

We find that the Court of Claims erred, since its determination "reflected an assessment of the credibility of the evidence adduced at this early stage * * * [and] the weighing of the evidence is more appropriately a function to be exercised at the actual trial" *(Dozier v State of New York, supra,* at 761).

Based upon our review of the claim, we find that "while events may prove later that claimant is unable to carry his burden of establishing his innocence by clear and convincing evidence, we cannot say at this stage that the facts set forth in the claim do not indicate a likelihood of success at trial or that the facts are not sufficiently detailed" *(Lanza v State of New York,* 130 AD2d 872, 873-874 [1987]). Therefore, we find that a cause of action has been stated under Court of Claims Act § 8-b.

Accordingly, the order, Court of Claims (Adolph C. Orlando, J.), entered February 5, 1988, which denied the motion of claimant, Mr. Lawrence Solomon, for partial summary judgment on liability and dismissed the claim, should be unanimously modified, on the law and on the facts, to the extent of reinstating the claim, and, except as thus modified, otherwise affirmed, without costs.

MURPHY, P. J., KUPFERMAN, ELLERIN and RUBIN, JJ., concur.

Order, Court of Claims of the State of New York, entered on February 5, 1988, unanimously modified, on the law and the facts, to the extent of reinstating the claim, and, except as thus modified, otherwise affirmed, without costs and without disbursements.