428

[947 NE2d 639, 922 NYS2d 865]

DOUGLAS WARNEY, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 114826.)

Argued February 8, 2011; decided March 31, 2011

**POINTS OF COUNSEL**

*Neufeld Scheck & Brustin, LLP*, New York City (*Peter J. Neufeld, Deborah L. Cornwall, Anna Benvenutti Hoffmann* and

*Sarah A. Crowley* of counsel), and *Easton Thompson Kasperek, LLP,* Rochester (*Donald Thompson* of counsel), for appellant. I. Nothing Mr. Warney did bars him from compensation under Court of Claims Act § 8-b. (*Ivey v State of New York,* 80 NY2d 474; *Rivers v State of New York,* 152 Misc 2d 332; *Williams v State of New York,* 87 NY2d 857; *Stevenson v State of New York,* 137 Misc 2d 313; *Mike v State of New York,* 11 Misc 3d 384; *Britt v State of New York,* 260 AD2d 6; *Smith v State of New York,* 24 Misc 3d 1234[A], 2009 NY Slip Op 51744[U]; *Dillon v Dean,* 158 AD2d 579; *Benaquista v Municipal Hous. Auth. of City of Schenectady,* 212 AD2d 860; *Bisceglia v International Bus. Machs.,* 287 AD2d 674.) II. The claims court may not consider evidence outside a Court of Claims Act § 8-b claim or make credibility findings on a motion to dismiss pursuant to CPLR 3211. (*Vigliotti v State of New York,* 24 AD3d 1217; *Webb v State of New York,* 18 AD3d 648; *Barnes v State of New York,* 153 AD2d 968; *Leon v Martinez,* 84 NY2d 83; *Solomon v State of New York,* 146 AD2d 439; *Dozier v State of New York,* 134 AD2d 759; *Klemm v State of New York,* 170 AD2d 438; *Grimaldi v State of New York,* 133 AD2d 97; *Fudger v State of New York,* 131 AD2d 136; *Moses v State of New York,* 137 Misc 2d 1081.)

*Eric T. Schneiderman, Attorney General,* New York City (*Alison J. Nathan, Frank K. Walsh, Barbara D. Underwood, Andrew D. Bing* and *Andrea Oser* of counsel), for respondent. The claim was properly dismissed because claimant's own conduct caused or brought about his conviction. (*People v Wiggins,* 16 Misc 3d 1136[A], 2007 NY Slip Op 51715[U]; *People v Crews,* 74 AD3d 983; *People v Green,* 250 AD2d 143; *People v Lea,* 144 AD2d 863; *Lepkowski v State of New York,* 1 NY3d 201; *Long v State of New York,* 7 NY3d 269; *Fudger v State of New York,* 131 AD2d 136, 70 NY2d 616; *Berger v City of New York,* 260 App Div 402, 285 NY 723; *Reed v State of New York,* 78 NY2d 1; *David W. v State of New York,* 27 AD3d 111, 7 NY3d 709.)

*Emery Celli Brinckerhoff & Abady LLP,* New York City (*Andrew G. Celli, Jr.,* and *Debra Greenberger* of counsel), and *Nathalie Gilfoyle* for American Psychological Association, amicus curiae. I. Confessions that are voluntary as a matter of law can be unreliable in fact. II. Certain factors predictably increase the risk of false confessions. (*Atkins v Virginia,* 536 US 304.)

*Patterson Belknap Webb & Tyler LLP,* New York City (*Joshua A. Goldberg, Elizabeth H. Shofner* and *Anna Skiba-Crafts* of counsel), *Keith A. Findley, University of Wisconsin Law School,*

Madison, Wisconsin, *Steven A. Drizin, Northwestern University School of Law*, Chicago, Illinois, and *Daniel S. Medwed, S.J. Quinney College of Law at the University of Utah*, Salt Lake City, Utah, for The Innocence Network, amicus curiae. The mere fact that a confession was deemed "voluntary" for purposes of admitting it at a criminal trial does not mean that it was "uncoerced" so as to bar Court of Claims Act § 8-b relief. (*People v Green*, 73 AD3d 805; *People v Camacho*, 70 AD3d 1393; *Dickerson v United States*, 530 US 428.)

## OPINION OF THE COURT

CIPARICK, J.

Claimant Douglas Warney spent over nine years incarcerated for a murder he did not commit. The primary evidence against him was a confession that contained non-public details about the crime. Warney now seeks damages under Court of Claims Act § 8-b, the Unjust Conviction and Imprisonment Act. We conclude that Warney's confession and other statements and actions the State attributes to him do not, on the facts as alleged here, warrant dismissal of his claim on the ground that he caused or brought about his conviction.

The facts as stated in the claim and record below are as follows. On January 3, 1996, Rochester Police Department (RPD) officers found William Beason dead in his home, stabbed 19 times in the neck and chest. The following day, Warney called the RPD to provide information about the murder, and was interviewed in his home by an officer. According to the officer's trial testimony, Warney told her that he had been shoveling snow outside "William's" house when he saw his cousin go inside, and that the cousin later admitted to Warney that he had killed Beason.

Warney alleges that he has an IQ of 68, was in special education until he dropped out of school in eighth grade, and was suffering at the time of the Beason investigation from AIDS-related dementia. Additionally, the RPD was aware of his mental condition when it began questioning him about the Beason murder, as officers had transported Warney to a psychiatric facility two weeks earlier for pulling fire alarms and reporting false incidents to the police.

On January 6, 1996, two RPD officers brought Warney to the police station for questioning. The claim alleges that they used "escalating coercive tactics to force . . . Warney to make statements or admissions concerning the murder," and one of them

verbally abused and threatened him. It further alleges that the officers denied Warney's request for an attorney.

Warney gave a series of increasingly inculpatory statements, initially blaming his cousin, but eventually confessing to murdering Beason on his own. He signed a detailed written confession stating that, acting alone, he had stabbed Beason repeatedly. The confession contained numerous details that allegedly corroborate crime scene evidence that the RPD had intentionally held back from the public.[1] The claim alleges that the officers fed these details to Warney, creating "a false sense of the confession's reliability," and coerced him into adopting the detailed confession as his own.

At central booking, an officer not involved in the investigation asked Warney how he was doing. According to the officer's testimony, he responded, "[n]ot good. I've got a body," slang for having killed someone. In contrast, Warney testified that he said, "I'm being charged with a body."

On February 13, 1996, a grand jury indicted Warney on two counts of second degree murder. Before trial, Supreme Court denied Warney's motion to suppress his statements to police, finding that he "initiated most contacts with the police and then freely volunteered information to them," that he never requested an attorney, and that "no threats or promises were ever made to [him] and no fraud or tricks were used to solicit statements." At trial, Warney's signed confession was the primary evidence against him, although he testified that it was coerced and manufactured by the police. The prosecutor emphasized that the confession contained details that, in his words during closing, "only the killer would have known about."

Warney was convicted of both second degree murder counts on February 12, 1997. Supreme Court sentenced him on February 27, 1997 to imprisonment for 25 years to life on each count, to run concurrently. The Appellate Division affirmed (*People v*

---

**1.** These corroborating details include: (1) that Beason was cooking chicken and mashed potatoes at the time of his murder; (2) that Beason was wearing a red-striped nightshirt; (3) that Beason was stabbed "about 15 or more" times with a 12-inch serrated knife; (4) that Beason's throat was slit; (5) that Beason's body was left on his bed, face up and eyes open; (6) that the perpetrator was wounded; (7) that the perpetrator cleaned his wound with "a paper towel," which he discarded in the toilet; (8) that the perpetrator put intensive care lotion on his wound; and (9) that the back door and basement door were locked. Additionally, evidence was introduced at trial that Warney orally "confessed" that, prior to the murder, he and Beason had been watching a pornographic tape featuring two men.

*Warney*, 299 AD2d 956 [4th Dept 2002]) and leave to this Court was denied (99 NY2d 633 [2003]).

Warney consistently maintained his innocence and sought to conduct DNA testing on biological crime scene evidence. Although his application to access this evidence was denied, the People submitted the material for testing, which resulted in a DNA profile that did not match Warney. In March 2006, nine years after Warney's conviction, the Combined DNA Index System (CODIS) database yielded a match, a man named Eldred Johnson. The RPD discovered that fingerprints from the crime scene matched Johnson's and, on May 11, 2006, Johnson confessed that, acting alone, he had murdered Beason.[2] As a result, on May 16, 2006, Supreme Court vacated Warney's conviction and set aside his sentence pursuant to CPL 440.10 (1) (g) on the grounds of newly discovered evidence.

Warney now seeks damages under Court of Claims Act § 8-b for the years he spent wrongly incarcerated. His claim alleges that he "did not cause or contribute to his own wrongful arrest, conviction, or incarceration," but rather his conviction "was the direct result of the intentional and malicious actions of members of the [RPD] who fabricated and coerced a false confession from . . . a man whom they knew had a history of serious mental health problems." The State moved to dismiss the claim for failing to state facts in sufficient detail to demonstrate that Warney is likely to succeed at trial in proving that he did not bring about his own conviction.

Court of Claims granted the State's motion and dismissed the claim. It was "not convinced" that only the perpetrator and police could have known many of the details contained in the confession, and noted that Warney "does not indicate how he was coerced by police to give a false confession." Moreover, the court held that Warney, "by his own actions, which included calling the police to tell them he had information about the murder, trying to frame an innocent man for the crime, and . . . volunteering that he had 'a body' . . . did cause or bring about his own conviction." Warney appealed.

The Appellate Division affirmed, reasoning that a criminal defendant who gave an uncoerced false confession that was presented to the jury at trial could not subsequently bring an action under section 8-b, and that Warney failed to adequately allege that his confession was coerced (*see Warney v State of New*

---

2. Johnson pleaded guilty to second degree murder in March 2007.

*York*, 70 AD3d 1475, 1476 [4th Dept 2010]). The Appellate Division also found that Warney brought about his own conviction by making other incriminating statements, and by approaching the police falsely claiming to have information about the murder (*see id.*). We granted Warney leave to appeal (14 NY3d 883 [2010]) and now reverse.

Court of Claims Act § 8-b, the Unjust Conviction and Imprisonment Act, provides a mechanism for "innocent persons who can demonstrate by clear and convincing evidence that they were unjustly convicted and imprisoned . . . to recover damages against the state" (Court of Claims Act § 8-b [1]; *see also Ivey v State of New York*, 80 NY2d 474, 479 [1992]). It offers claimants who meet its strict pleading and evidentiary burdens "an available avenue of redress over and above the existing tort remedies" (Court of Claims Act § 8-b [1]).

To present a claim under the statute, a claimant must "establish by documentary evidence" that (a) the claimant was convicted of a crime, sentenced to a term of imprisonment, and served at least part of the sentence; (b) the claimant was pardoned on the ground of innocence or, alternatively, the conviction was reversed or vacated and the accusatory instrument was dismissed; and (c) the claim is not time-barred (Court of Claims Act § 8-b [3]). Here, the State does not dispute that Warney met this initial burden.

The statute further requires that the claim "state facts in sufficient detail to permit the court to find that claimant is likely to succeed" in meeting his or her burden at trial of proving by clear and convincing evidence that, as relevant here, (a) "he did not commit any of the acts charged in the accusatory instrument" and (b) "he did not by his own conduct cause or bring about his conviction" (Court of Claims Act § 8-b [4]). "If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim" (Court of Claims Act § 8-b [4]).

The parties here debate whether, in addition to being sufficiently detailed, the allegations in the pleading must have evidentiary support. We now clarify that no such support is necessary, except where expressly indicated by the statute. Although a claimant must submit documentary evidence supporting certain facts pursuant to Court of Claims Act § 8-b (3), the pleading standard articulated in Court of Claims Act § 8-b (4) lacks any analogous requirement. Because the State, in waiving

its sovereign immunity from suit, has consented to have its liability "determined in accordance with the same rules of law as applied to actions in the supreme court," except where superseded by the Court of Claims Act or Uniform Rules for the Court of Claims (Court of Claims Act § 8; *see also* 22 NYCRR 206.1 [c] [matters not covered by the Court of Claims Act or Uniform Rules for the Court of Claims are governed by the CPLR]), we presume that the familiar standard governing motions to dismiss in Supreme Court is appropriate here (*see* CPLR 3211). Therefore, Court of Claims, like other trial courts, should "accept the facts as alleged in the [claim] as true" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).

Of course, section 8-b still imposes a higher pleading standard than the CPLR. Court of Claims must consider whether the allegations are sufficiently detailed to demonstrate a likelihood of success at trial (*see* Court of Claims Act § 8-b [4]). "[T]he allegations in the claim must be of such character that, if believed, they would clearly and convincingly establish the elements of the claim, so as to set forth a cause of action" (*Solomon v State of New York*, 146 AD2d 439, 442 [1st Dept 1989]). In evaluating the likelihood of success at trial, Court of Claims should avoid making credibility and factual determinations (*see Klemm v State of New York*, 170 AD2d 438, 439 [2d Dept 1991] ["In the absence of serious flaws in a . . . statement of facts, the weighing of the evidence is more appropriately a function to be exercised at the actual trial" (quoting *Dozier v State of New York*, 134 AD2d 759, 761 [3d Dept 1987])]; *Solomon*, 146 AD2d at 445 [Court of Claims erred in "assess(ing) . . . the credibility of the evidence . . . (and) weighing . . . the evidence (which) is more appropriately a function to be exercised at the actual trial"]). In short, a claimant who meets the evidentiary burdens described in Court of Claims Act § 8-b (3) and makes detailed allegations with respect to the elements described in section 8-b (4) is entitled to an opportunity to prove the allegations at trial (Court of Claims Act § 8-b [5]). With these principles in mind, we turn to the claim at issue here.

■ Court of Claims' dismissal was based in large part on factual determinations that were inappropriate at this stage of the litigation. First, although Warney alleges in detail that his confession was coerced, the court concluded that "the evidence presented" did not "indicate" that it was. The court was "not convinced" that, as Warney alleges, "only the police and the true perpetrator could have known many of the factual details"

in the confession. These findings were premature; the proper inquiry was whether Warney's allegations, if true, demonstrate a likelihood of success at trial, not whether they were supported by convincing evidence. As the State concedes, a coerced false confession does not bar recovery under section 8-b because it is not the claimant's "own conduct" within the meaning of the statute.[3] Assuming the truth of Warney's allegations, as we must, the police used "coercive tactics" and threats to induce his confession. The allegations describe how no member of the public other than the perpetrator could have known all the details contained in the confession—whether negligently or through intentional manipulation, police misconduct led to the inclusion of these details in Warney's statement. Thus, Warney has adequately pleaded that he was coerced into adopting the false confession.[4]

Second, Court of Claims determined that Warney's statement to an RPD officer, "I've got a body," which was introduced against him at trial, was conduct contributing to his conviction. Warney has never admitted to making that statement, however, and his claim alleges that, as he maintained at trial, he actually said "I'm being charged with a body." Accepting Warney's allegations as true, we presume that he never made this inculpatory statement. Determining what Warney said is purely a credibility determination, pitting his account against the officer's. The officer's testimony is no more or less convincing, at this pleading stage, than Warney's account of the conversation.

■ The State further argues that Warney's initial interactions with the RPD ought to bar him from recovery. We disagree. A claimant's statutory obligation to prove that "he did

3. Warney argues that the word "conduct" in the statute should be read as "misconduct," as this reading is in line with clear legislative intent (see 1984 Report of the Law Revision Commission to the Governor on Redress for Innocent Persons Unjustly Convicted and Subsequently Imprisoned, reprinted in 1984 McKinney's Session Laws of NY, at 2899, 2932 [claimant should "have to establish that he did not cause or bring about his prosecution by reason of his own misconduct"]). Because he alleges that no conduct of his brought about his conviction, however, we find it unnecessary to consider whether such conduct must rise to the level of misconduct.

4. The State contends that since Supreme Court ruled at a suppression hearing prior to the criminal trial that the confession was voluntarily given, it cannot be found in this action to have been coerced. We reject that contention and conclude that although the statement was admissible at the criminal trial, the judge there lacked many of the facts now stated in Warney's claim. Most importantly, the question of coercion must now be viewed in light of Warney's innocence.

not . . . cause or bring about his own conviction" (Court of Claims Act § 8-b [4] [b]) could conceivably be read as barring recovery when *any* action by the claimant caused or brought about the underlying conviction, no matter how indirectly. This reading, however, would bar recovery by every innocent claimant who inadvertently and unforeseeably played some small role in the chain of events leading to his or her conviction. Instead, as we have previously suggested, a claimant's conduct bars recovery under the statute only if it was the "proximate cause of conviction" (*Ivey*, 80 NY2d at 482). Warney's early conversations with the RPD, as the events are described in his claim, did not cause or bring about his conviction within the meaning of the statute. While Warney acknowledges that he initiated contact with the RPD, triggering the questioning that ultimately led to his false confession and conviction, he alleges that he was "severely mentally impaired," and that the RPD knew of his mental illness. Moreover, it was the RPD's alleged mishandling of the ensuing investigation that ultimately resulted in Warney's conviction.

In sum, the courts below inappropriately made credibility and factual findings, dismissing Warney's claim without giving him the opportunity to prove his detailed allegations that he did not cause or bring about his conviction. Because these allegations, taken as true, demonstrate a likelihood of success at trial, Warney is entitled to proceed with his claim, secure discovery, and obtain a disposition on the merits.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the defendant's motion to dismiss the claim denied.

SMITH, J. (concurring). I agree with the result the majority reaches, and have no major quarrel with the general principles it states. I write separately to emphasize that the application of those principles in this case is easy, because this claimant appears, on the present record, to have an exceptionally strong case. Our decision today should not be read as implying that any claimant can, by skillful pleading, get a significantly weaker case past a motion to dismiss.

## I

It may not be obvious from the majority opinion how compelling a case Warney's statement of claim presents. His confession, now known to be false, included a number of facts—many

of them recited in the majority's footnote 1 (at 432)—known only to the police and to the real murderer. It seems highly likely that the inclusion of these facts is the reason Warney was convicted. How, the prosecutor at Warney's trial asked rhetorically, could Warney have known these facts if he were innocent?

> "How would he have known about a tissue wrapped in the form of a bandage if he hadn't had been in Mr. Beason's bathroom? Only the killer would have known about that and about the knife and about the towel with the blood on it and about the video tapes. . . .
>
> "[H]e knew how Mr. Beason was dressed, and he described a nightshirt . . . The Defendant says he's cooking dinner, and he's particular about it, cooking chicken . . . Now, who could possibly know these things if you hadn't been inside that house, inside the kitchen? . . .
>
> "The Defendant described the knife as being twelve inches, with ridges. I think [forensic testimony] said it was thirteen inches with the serrated blade."

Now that his innocence has been established, Warney echoes the prosecutor's question: How indeed could he have known all these facts? It is hard to imagine an answer other than that he learned them from the police. In short, the details set forth in Warney's 41-page statement of his claim, with 58 pages of annexed exhibits, point strongly to the conclusion that the police took advantage of Warney's mental frailties to manipulate him into giving a confession that contained seemingly powerful evidence corroborating its truthfulness—when in fact, the police knew, the corroboration was worthless.

The majority correctly holds that this sort of police conduct, if proved at trial, would be sufficient to show that Warney "did not by his own conduct cause or bring about his conviction" (Court of Claims Act § 8-b [4] [b]). In general, a claimant who gives an uncoerced confession to a crime he did not commit should be found to have caused his own conviction (*see* Report of the Law Revision Commission to the Governor on Redress for Innocent Persons Unjustly Convicted and Subsequently Imprisoned [hereafter Commission Report], reprinted in 1984 McKinney's Session Laws of NY, at 2899, 2932 [listing "falsely giving an uncoerced confession of guilt" as among the acts of misconduct that justify rejecting a claim]). But a confession can-

not fairly be called "uncoerced" that results from the sort of calculated manipulation that appears to be present here—even if the police did not actually beat or torture the confessor, or threaten to do so. Thus, while Warney's claim does include the general allegation that the police threatened him "both physically and otherwise," I view this allegation as unnecessary— and, if it stood alone, obviously insufficient—to prevent dismissal of Warney's claim. The majority opinion, as I interpret it, does not disagree.

Of course it would be wrong to assume that the State cannot refute Warney's assertions. Claims that appear strong at the pleading stage do not always win. But I have no hesitation in concluding that Warney's claim states facts "in sufficient detail to permit the court to find that claimant is likely to succeed at trial" (Court of Claims Act § 8-b [4]). The contrary decisions of the courts below seem to me not just "premature," as the majority says (majority op at 436), but simply wrong.

## II

I have emphasized the strength of Warney's claim because I am concerned that some of the majority's generalizations, made in the context of this very strong claim, will be misunderstood as requiring courts to uphold much weaker ones. I agree that, as a general matter, a claimant need not actually present his evidence as part of his claim; detailed allegations are enough. And I also agree that CPLR 3211 applies in actions under Court of Claims Act § 8-b, except to the extent that section 8-b imposes a more stringent pleading standard; thus, where there is a bona fide factual dispute, the claimant's allegations should be taken as true. That does not mean, however, that allegations implausible or unconvincing on their face are sufficient to prevent dismissal of a claim for unjust conviction and imprisonment. So to hold would be to read out of the statute provisions that the Legislature wrote in, in an attempt to balance two important, and competing, goals: to compensate people who have been unjustly convicted, but also to protect the State against the administrative burden, and the cost of nuisance settlements, that could result from having to litigate a large number of false claims.

In pursuit of the latter goal, the Legislature strengthened the tests normally applied to gauge the sufficiency of pleadings, requiring not only that a claim be stated in "detail"—itself a significant departure from the normal rule—but "in sufficient

detail to permit the court to find that claimant is likely to succeed at trial'' (Court of Claims Act § 8-b [4]). Lest anyone miss the point, the Legislature added this sentence: ''If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim, either on its own motion or on the motion of the state'' (*id.*). The Report of the Law Revision Commission accompanying the proposed legislation that became Court of Claims Act § 8-b makes quite clear that this provision should have real teeth. The legislation is based, the Commission said, on:

> ''a careful balancing between the goal of compensating one who has been unjustly convicted and imprisoned, and society's dual interest of ensuring that only the innocent recover and of preventing the filing of frivolous claims. With respect to the latter, the Commission is most sensitive to the needs of the criminal justice system in that is does not want to overburden the staffs of the Attorney General and the District Attorneys with the defense of frivolous claims.'' (Commission Report, 1984 McKinney's Session Laws of NY, at 2926.)

The Commission added: ''Consequently . . . most cases will not survive a motion to dismiss. The few exceptions will be the ones appropriate for a full hearing on the claim of innocence'' (*id.* at 2930). No one should conclude from today's decision that we have opened a loophole that will defeat this legislative goal.

Chief Judge LIPPMAN and Judges PIGOTT and JONES concur with Judge CIPARICK; Judge SMITH concurs in result in a separate opinion in which Judges GRAFFEO and READ concur.

Order reversed, etc.