# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**646**

**CA 13-01679**

PRESENT: SCUDDER, P.J., FAHEY, CARNI, VALENTINO, AND WHALEN, JJ.

---

DANIEL G. GRISTWOOD, CLAIMANT-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

STATE OF NEW YORK, DEFENDANT-APPELLANT.
(CLAIM NO. 114040.)

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (ROBERT M. GOLDFARB OF COUNSEL), FOR DEFENDANT-APPELLANT.

LYNN LAW FIRM, LLP, SYRACUSE (PATRICIA A. LYNN-FORD OF COUNSEL), FOR CLAIMANT-RESPONDENT.

---

Appeal from a judgment of the Court of Claims (Nicholas V. Midey, Jr., J.), entered May 7, 2013. The judgment awarded claimant money damages after a trial for unjust conviction and imprisonment.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: In this action for damages for wrongful conviction and imprisonment pursuant to Court of Claims Act § 8-b, defendant, State of New York (State), appeals from a judgment that, after a bifurcated trial, awarded claimant damages in the sum of $5,485,394. In 1996, claimant was convicted of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and criminal possession of a weapon in the fourth degree (§ 265.01 [2]) following an assault upon his wife that occurred on January 12, 1996. The only evidence linking claimant to the crime was an inculpatory statement he made to the police, and claimant otherwise maintained his innocence throughout the criminal proceeding.

Claimant was sentenced to concurrent terms of incarceration of 12½ to 25 years on the attempted murder count and one year on the criminal possession of a weapon count. However, in 2003, an individual came forward and gave statements to the New York State Police in which he confessed to the attack on claimant's wife and provided extensive details that accurately described the crime scene and the attack. Claimant moved pursuant to CPL 440.10 (1) (g) to vacate the judgment of conviction on the ground that the individual's statements constituted "newly discovered evidence." Following a hearing, County Court granted the motion, and the indictment was dismissed on July 20, 2006. As a result, claimant was released from prison after being incarcerated for more than nine years, and he

thereafter brought this claim.

We reject the State's contention that the Court of Claims erred in excluding the transcripts of claimant's criminal trial. Whether evidence should be excluded as cumulative is a determination that rests within the sound discretion of the court, and we conclude that the exclusion of the transcripts was not an abuse of discretion in this case (*see generally Cor Can. Rd. Co., LLC v Dunn & Sgromo Engrs., PLLC*, 34 AD3d 1364). The State failed to offer the transcripts of the CPL 440.10 hearing in evidence and thus has failed to preserve for our review its contention that those transcripts should have been admitted in evidence (*see Goncalves v State of New York*, 1 AD3d 914, 914).

We reject the State's further contention that claimant failed to establish by the requisite clear and convincing evidence that he "did not commit any of the acts charged in the accusatory instrument" (Court of Claims Act § 8-b [5] [c]). A determination of the Court of Claims will not be set aside unless the court's conclusions could not have been reached upon any fair interpretation of the evidence (*see Supensky v State of New York*, 2 AD3d 1436, 1437). We conclude that the court properly determined that the statements of the individual who came forward in 2003, which were amply corroborated by other evidence, and the absence of any other evidence linking claimant to the crime, established by the appropriate quality of proof that claimant did not commit the acts alleged in the accusatory instrument (*see* § 8-b [5] [c]).

We reject the State's further contention that, because claimant made an inculpatory statement, the record does not support the determination that claimant established by clear and convincing evidence that he did not "by his own conduct cause or bring about his conviction" (Court of Claims Act § 8-b [5] [d]). Claimant consistently maintained his innocence and contended that his inculpatory statement was coerced. "[A] coerced false confession does not bar recovery under section 8-b because it is not the claimant's 'own conduct' within the meaning of the statute" (*Warney v State of New York*, 16 NY3d 428, 436). It is well settled that "[t]he voluntariness of a confession can only be determined through an examination of the totality of the circumstances surrounding the confession" (*People v Leonard*, 59 AD2d 1, 12; *see Clewis v Texas*, 386 US 707, 708-711). "Relevant criteria include the duration and conditions of detention, the manifest attitude of the police toward the detainee, the existence of threat or inducement, and the age, physical state and mental state of the detainee" (*Leonard*, 59 AD2d at 13; *see also Brown v United States*, 356 F2d 230, 232). The use or misuse of a polygraph examination is also a factor to be considered in determining whether there was impermissible coercion (*see Leonard*, 59 AD2d at 14-15).

Here, we conclude that the record fully supports the court's determination that claimant's inculpatory statement was the product of police misconduct (*see Warney*, 16 NY3d at 436). Claimant was awake for 34 hours before making his only inculpatory statement, which was

the second statement he made.  He had been interrogated for 15 hours in a six- by eight-foot windowless room.  He ate nothing and drank only one can of soda and, although he was a heavy smoker, he had no cigarettes in the prior four or five hours.  He remained under the severe emotional trauma of having seen his wife in a horrible bloodied and battered condition.  Claimant was advised that, if he took a polygraph exam and passed, he would be permitted to go home.

Notably, the polygraph operator expressed significant concern to fellow officers about the reliability of the polygraph exam because claimant was "somewhat physiologically unresponsive to the polygraph." The operator acknowledged that claimant was trying not to fall asleep during the exam.  Claimant experienced severe chest pains during the exam.  Nevertheless, after the polygraph exam, the interrogation took on an increasingly aggressive and hostile tone, and claimant was told by the police that he was "lying."  Claimant's inculpatory statement was made after he was threatened that he would never see his family again if he did not cooperate.  Thus, in view of the totality of circumstances surrounding claimant's statement, and giving due deference to the findings of the court (*see Goncalves*, 1 AD3d at 914), we conclude that the court properly determined that claimant's statement was not voluntarily made and that claimant therefore did "not by his own conduct cause or bring about his conviction" (Court of Claims Act § 8-b [5] [d]).

The State also contends that the nonpecuniary damages awarded claimant are excessive because they deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]).  Pursuant to Court of Claims Act § 8-b (6), upon finding that the claimant is entitled to a judgment, the court "shall award damages in such sum of money as the court determines will fairly and reasonably compensate him."  A claimant must prove his entitlement to an award for future damages "by a reasonable certainty" (*Baba-Ali v State of New York*, 19 NY3d 627, 641).  Although the statute provides little in the way of specifics, we note that the amount of any such award should be determined in accordance with "traditional tort and other common-law principles" (*Carter v State of New York*, 139 Misc 2d 423, *affd* 154 AD2d 642).  We decline to adopt any formulaic standard for the assessment of nonpecuniary damages (*see id.* at 430).  "Guiding this Court in its determination of the elements of and amount for non-pecuniary damages is the body of case law that eloquently addresses the grievous suffering, mental anguish, loss of liberty, degradation, loss of reputation, humiliation and other injuries of those unjustly convicted and imprison[ed]" (*Gonzalez v State*, 26 Misc 3d 1212[A], 2009 Slip Op 52714[U], *12; see Campbell v State of New York*, 186 Misc 586, 590-591).  The relevant period for awarding damages is the date of conviction to the end of imprisonment, and damages also may be awarded for "any subsequent or continuing damages shown to have proximately resulted" from the conviction and imprisonment (*Carter*, 139 Misc 2d at 429).

At the time of the crime, claimant lived with his wife and five young children.  Claimant established that his conviction and incarceration had a catastrophic impact on his personal and family

life during the period of incarceration and continuing thereafter. Claimant also established that he suffers from chronic posttraumatic stress disorder, chronic depressive disorder, and chronic anxiety disorder and prominent avoidant and paranoid traits, all as the result of his unjust conviction and incarceration.  At the time of trial, claimant had a life expectancy of an additional 32.7 years (*see* PJI 2:281).  The court awarded claimant $2,700,000 for loss of liberty, mental anguish and loss of family relationships while incarcerated and $1,920,000 for continuing pain and suffering, including post-incarceration psychological injuries.  Under the circumstances established by claimant and presented by this record, we conclude that the nonpecuniary damages awarded do not deviate materially from what would be reasonable compensation (*see generally* CPLR 5501 [c]).

Entered:  July 11, 2014                          Frances E. Cafarell
                                                 Clerk of the Court