OPINION OF THE COURT
Terry Jane Ruderman, J.
Defendant moves for summary judgment dismissing the claims of Sherrie Weaver and David Sheps. The facts as alleged are essentially undisputed.[2] Weaver asserts that, during the time period between December 2003 and January 2008 when she was an inpatient at Rockland Psychiatric Center, the facility director, as Weaver’s representative payee, received more than $25,000 in Social Security benefits on behalf of Weaver, and applied a substantial portion of those benefit funds toward the cost of care and treatment rendered by the facility to Weaver. Another portion of the benefits, $2,000, was set aside for Weaver’s discharge in the community and $1,500 was placed in an account for her future burial expenses. Sheps alleges that, during the time period of between June 2004 and May 2009 when he was an inpatient in South Beach Psychiatric Center, the facility director, as Sheps’ representative payee, received more than $54,000 in Social Security benefits on behalf of Sheps and applied a substantial portion of those benefit funds toward the cost of care and treatment rendered by the facility to Sheps. *181 Another portion of the benefits, $2,000, was set aside for Sheps’ discharge in the community and $1,500 was placed in an account for his future burial expenses. The actual expenses incurred by the State for the costs of care for Weaver were more than $700,000 and those for Sheps exceeded one million dollars (Schaefer Hayes affidavit, 1111 36, 40).
Claimants argue that, pursuant to the Mental Hygiene Law, as it existed prior to its recent amendment on June 14, 2010,[3] the facility directors, acting as representative payees, violated section 29.23 by receiving in excess of $5,000 in Social Security benefits on behalf of claimants and violated the fiduciary duties set forth in section 33.07 (e) by using a substantial portion of those benefit funds to pay for part of the costs of care and treatment rendered to claimants at the facilities, i.e., claimants’ hospital charges. Claimants also argue that the facility directors had a conflict of interest by acting as representative payees for claimants, who were facility patients. Specifically, claimants argue that their Social Security benefits were subject to the limitation upon a representative payee to receive “funds or other personal property ... up to an amount or value not exceeding five thousand dollars” and that “[s]uch funds ... so received shall be placed to the credit of the patient ... to provide, in the first instance, for luxuries, comforts and necessities for such patient, including burial expenses, and, if funds are thereafter available, for the support of such patient” (Mental Hygiene Law § 29.23) and that such funds shall be maintained in a “fiduciary capacity to the patient” (Mental Hygiene Law § 33.07 [e]). Thus, claimants argue that the facility directors should have preserved claimants’ Social Security benefits to be used “in the first instance, for luxuries, comforts, and necessities” before any of the Social Security benefits were applied to claimants’ hospital charges. Accordingly, Weaver and Sheps seek to be awarded money damages in a sum equal to the amount of Social Security benefits that the facility directors received in excess of $5,000, as claimants’ representative payees, and then applied toward claimants’ hospital charges.
Defendant argues that Mental Hygiene Law § 29.23 and its limitation upon the amount of funds a facility director may receive as a representative payee does not apply to Social Seeu *182 rity benefits. Additionally, the application of claimants’ Social Security benefits to the claimants’ hospital charges did not violate the payees’ fiduciary duties under Mental Hygiene Law § 33.07 (e) because, consistent with federal law, claimants’ Social Security benefits were properly applied toward the cost of claimants’ care and maintenance, which is the very purpose for which those benefits were intended, and was not a breach of any fiduciary duty.
Analysis
Social Security benefits are intended to be used for the basic needs of shelter, food, and health care for the individuals entitled to coverage. Federal law authorizes the payment of Social Security benefits to “a representative payee” and a facility director of an “institution having custody of the beneficiary” may serve as a representative payee (42 USC § 405 Q] [1] [A]; § 1383 [a] [2] [A] [ii] [I]; 20 CFR 404.2021 [a] [3]; 416.621 [a] [3]). The payee may expend funds only for the use and benefit of the beneficiary which is determined by the payee to be in the beneficiary’s “best interests” (20 CFR 404.2035 [a]; 416.635 [a]). Payments made by the representative payee for the beneficiary’s “current maintenance” are deemed to be used in the beneficiary’s best interest (20 CFR 404.2040 [a] [1]). “[C]urrent maintenance” for a beneficiary receiving care at an institution due to a mental incapacity “includes the customary charges made by the institution” as well as expenditures for items which will aid in the patient’s recovery or discharge (20 CFR 404.2040 [b]; 416.640 [b]).
In Washington State Dept. of Social & Health Servs. v Guardianship Estate of Keffeler (537 US 371 [2003]), the United States Supreme Court addressed arguments similar to those advanced by claimants in this matter. In Keffeler (supra), a class action was brought on behalf of children in foster care receiving Social Security benefits. The benefits were paid to the State, acting as a representative payee of the children, and the State used a substantial portion of the benefit funds to pay for the State’s costs for the maintenance of the children. The Supreme Court rejected the argument that allowing a state agency to reimburse itself for foster care costs is antithetical to the children’s best interests and a violation of 42 USC § 407 (a), which protects such benefits from execution, levy, attachment, garnishment or other legal process (Keffeler). The Supreme Court further stated that “a representative payee serves the *183 beneficiary’s interest by seeing that basic needs are met, not by maximizing a trust fund attributable to fortuitously overlapping state and federal grants” {id. at 390).
There is no federal statute limiting the amount of Social Security benefits a representative payee may receive on behalf of a beneficiary or may apply to the costs of the beneficiary’s current maintenance or institutional care. Thus, the only issue presented in this matter is whether the facility directors, as representative payees for claimants’ benefits, acted in contravention of state law as argued by claimants.
It is noted that the predecessor section to section 29.23 of the Mental Hygiene Law predated the enactment of Social Security benefits and the primary purpose of this section of the Mental Hygiene Law was to allow facility directors to receive limited property owned by a patient when the patient entered a facility. The statute was not intended to apply to “payments by Federal agencies, which under their own pertinent regulations have been empowered to pay benefits directly to institutions in which the beneficiaries thereof are confined” (Matter of Arnold, 26 Misc 2d 298, 300 [I960]). A plain reading of the text of the sections of the Mental Hygiene Law invoked by claimants does not provide for an absolute and affirmative prohibition upon a facility director ever receiving funds in excess of $5,000 for any and all purposes. Rather, the first sentence of section 29.23 merely sets the limit of $5,000 for the dollar amount of “funds” and the value of “other personal property” which may be received by a facility director on behalf of a patient and set aside for the limited purposes specified in the third sentence. The first sentence of section 29.23 provides that a facility director, acting on behalf of a patient, may receive “funds or other personal property . . . up to an amount or value not exceeding five thousand dollars.” The third sentence of that section then provides that
“[s]uch funds and the proceeds of the sale of other personal property so received shall be placed to the credit of the patient for whom received and disbursed on the order of the director, to provide, in the first instance for luxuries, comforts, and necessities for such patient, including burial expenses, and, if funds are thereafter available, for the support of such patient.”
The entire section, read in context, cannot be interpreted as advanced by claimants, i.e., as an implied mandate that all funds *184 received, including those received pursuant to federal law which are intended to meet the basic needs of persons covered by the Social Security Act, must be used in the first instance for luxuries, comforts, necessities and burial expenses.
A plain reading of Mental Hygiene Law § 33.07 (e) also refutes claimants’ arguments regarding the facility director’s authority to receive Social Security benefits only in a limited amount without violating any fiduciary duties. Section 33.07 (e) explicitly recognizes that a “mental hygiene facility” may act as a “representative payee for a patient pursuant to designation by the social security administration” and provides that “such funds,” without any express limitation on the dollar amount of benefits received, “shall” be maintained by the facility director in a “fiduciary capacity” to the patient.
This reading of the Mental Hygiene Law is consistent with the federal law policies and practices indicated above and is confirmed by the legislative history pertaining to the very recent 2010 amendments to these sections of the Mental Hygiene Law. Section 29.23 was amended to increase the amount of money, from $5,000 to $25,000, which may be set aside for a patient, to be used in the first instance for luxuries, comforts, necessities and burial expenses. The amendment further provided that “[t]his section shall not apply to any federal or state benefits received by the director as representative payee, which benefits shall be handled in accordance with section 33.07 of this title and regulations promulgated thereunder.” (Mental Hygiene Law § 29.23 [emphasis added].) The amendments to section 33.07 (e) expressly state that a facility director, as a patient’s representative payee, may receive funds “including benefits for which there is a state share,” and shall maintain
“such funds in a fiduciary capacity to the [patient]; provided that the application of such funds to the cost of care and treatment of such [patient] shall not, in and of itself, be a violation of such fiduciary obligation if such director acts in accordance with federal law and regulations.”
These amendments do not change a facility director’s authority as it previously existed under the statute. Rather, the amendments were intended to clarify the director’s authority. Indeed, the sponsor’s memorandum expressly states that these amendments were intended to:
“Clarify that facility directors who act as representative payees may use funds for care and treatment *185 consistent with federal law and regulations.
“The bill would clarify that State Facility Directors who act as federally-appointed representative payees may continue to use funds for the cost of a resident’s care and treatment, consistent with federal law and regulations. This bill would clarify that the application of funds for a person’s care and treatment by a facility director who acts as a representative payee for such person is not a violation of the director’s fiduciary obligation under Mental Hygiene Law § 33.07(e).” (Senate Introducer’s Mem in Support, Summary of Provisions, Bill Jacket, L 2010, ch 111, reprinted in 2010 McKinney’s Session Law News of NY, at A-144 [emphasis added].)
This statutory analysis of the text, purpose, and legislative history also avoids the anomalous result advanced by claimants. Claimants’ position that facility directors who receive Social Security benefits in excess of $5,000 on behalf of their covered patients violate Mental Hygiene Law by failing to preserve Social Security benefits to be used in the first instance for the patients’ luxuries, comforts and necessities and not for the patients’ cost of care and treatment rendered by the facility is contrary to the very purpose for which Social Security benefits were intended and authorized.
Claimants also argue that facility directors had a conflict of interest by acting as the representative payees for their patients’ benefits and then using those funds to pay the facility for the charges incurred for the patients’ maintenance, and that this constituted a breach of their fiduciary duties. This argument was specifically rejected by the United States Supreme Court in Keffeler.
As set forth above, claimants’ argument is refuted by the plain text of Mental Hygiene Law § 33.07 (e), which authorizes a “mental hygiene facility director” to act as a “representative payee for a [patient] pursuant to designation by the social security administration” and provides that such funds shall be maintained by the facility director in a “fiduciary capacity” to the patient. This fiduciary duty is met by acting in the best interests of the patient. As previously noted, paying the costs of a beneficiary’s current maintenance, which includes the costs incurred at a facility, is in the beneficiary’s best interests (see Keffeler, supra).
In support of claimants’ reading of the Mental Hygiene Law prior to its amendment, they rely primarily upon Muller v State *186 of New York (179 Misc 2d 980 [1999]), a Court of Claims case affirmed by the Fourth Department without opinion (Muller v State of New York, 280 AD2d 923 [2001]). Muller held that a facility director, as a patient’s representative payee, cannot receive more than $5,000 in funds under Mental Hygiene Law § 29.23, which funds are to be used in the first instance for the patient’s luxuries, comforts and burial expenses, and that the facility director had a conflict of interest which violated his fiduciary duty under Mental Hygiene Law § 33.07 (e) by using such funds to pay the facility’s costs of the patient’s care. Muller further held that the facility director violated 42 USC § 407 (a) by making the State a preferred creditor.
Muller, however, is not dispositive in this case. First, Muller did not go to the Court of Appeals as leave was denied (96 NY2d 715 [2001]); therefore, Muller is not the final interpretation of the statute.[4] Second, Muller was decided prior to the United States Supreme Court’s decision in Keffeler (supra), which specifically held that the State could act as a representative payee for the receipt of Social Security benefits and then use those benefits to reimburse itself for the costs of the covered individual’s maintenance without violating the payee’s fiduciary duties or 42 USC § 407 (a) and that such conduct was not contrary to the best interests of the beneficiaries. Thus, the Muller holding is undermined by the subsequent Keffeler decision. Third, the Muller holding leads to a result inconsistent with the statutory purpose and scheme, and would create a sweeping category of exempt property funded by federal benefits which cannot be used for their intended purposes.
Accordingly, since there are no genuine issues of material fact, this court grants defendant’s motion for summary judgment dismissing claim No. 115531 on the law.
In light of the above analysis, this court need not reach the other arguments made by the parties.

. Claimants further indicate that while the specific dollar amounts are not disputed, they will be resolved by an updated accounting provided by defendant.

. Prior to the final submission of papers on this motion, the statutes which claimants invoke were amended on June 14, 2010. Claimants argue that the amendments are not applicable because their claim was filed before June 14, 2010.

. In Matter of Joseph S. v Hogan (561 F Supp 2d 280 [ED NY 2008]), a Federal District Court Judge, addressing an issue not before this court, declined to follow Muller, stating: “[tihere is no ‘Muller line of cases’, and a single Court of Claims decision cannot be said to constitute the law of New York” (id. at 284). It is noted that Matter of Joseph S. v Hogan (supra) was decided after the Fourth Department’s affirmance of Muller (280 AD2d 923 [2001]).