SHERRIE WEAVER et al., Appellants, v STATE OF NEW YORK, Respondent. [939 NYS2d 64]—

Sherrie Weaver, on behalf of herself, and David Sheps, on behalf of himself and all others similarly situated (hereinafter together the claimants), commenced this claim against the State of New York, alleging that, while they were patients at mental health facilities operated by the New York State Office of Mental Health (hereinafter OMH), the directors of those mental health facilities (hereinafter the facility directors)—who acted as representative payees for the claimants' Social Security benefits— breached fiduciary duties owed to the claimants. Specifically,

the claimants alleged that, by applying a portion of the claimants' Social Security benefits to pay the facilities' hospital charges, and by failing to seek the appointment of a guardian of the claimants' property for money received in excess of $5,000, the facility directors violated Mental Hygiene Law former §§ 29.23 and 33.07 (e). The claimants sought to recover the benefits that were applied to the cost of their care allegedly in violation of these sections of the Mental Hygiene Law.

In March 2011 this Court affirmed an order of the Court of Claims, which granted the State's motion to dismiss the class action claims asserted in the amended claim on the ground that they did not satisfy all of the substantive pleading requirements set forth in Court of Claims Act § 11 (b) (*see Weaver v State of New York*, 82 AD3d 878, 879 [2011], *lv dismissed* 17 NY3d 778 [2011]). While the appeal from that order was pending before this Court, the State moved for summary judgment dismissing the amended claim on the ground that the restrictions on the receipt of a patient's personal property by a facility director, as set forth in Mental Hygiene Law former § 29.23, did not apply to Social Security benefits. The State also contended that the use of the claimants' Social Security benefits to pay a portion of their hospital charges did not violate the representative payees' fiduciary duties, as articulated in Mental Hygiene Law former § 33.07 (e). The State asserted that, consistent with federal law and regulations, the facility directors properly applied the claimants' Social Security benefits toward the cost of their care and maintenance. In response, the claimants relied upon the interpretation of these provisions of the Mental Hygiene Law given by the Appellate Division, Fourth Department, in *Muller v State of New York* (280 AD2d 923 [2001], *affg without opinion* 179 Misc 2d 980 [1999]). The claimants argued that, in *Muller*, the Court of Claims properly held that Social Security benefits fall within the ambit of Mental Hygiene Law former § 29.23, that facility directors had a conflict of interest when they acted as representative payees in connection with those benefits, and that facility directors breached their fiduciary duty under Mental Hygiene Law former § 33.07 (e) when they applied such benefits to defray the cost of a beneficiary's care. The claimants noted that the Court of Claims' order in *Muller* was affirmed without opinion by the Fourth Department, and contended that, since *Muller* was the only appellate authority on point, the Court of Claims was bound to follow *Muller*'s interpretation of the relevant sections of the Mental Hygiene Law.

While the State's motion for summary judgment was pending, the Legislature amended Mental Hygiene Law § 29.23 to provide

that its restrictions "shall not apply to any federal or state benefits received by the director as representative payee, which benefits shall be handled in accordance with section 33.07 of this title and regulations promulgated thereunder" (Mental Hygiene Law § 29.23, as amended by L 2010, ch 111). The Legislature also amended Mental Hygiene Law § 33.07 (e) by, inter alia, adding that the application of federal or state benefits received by the director as representative payee "to the cost of care and treatment of such person shall not, in and of itself, be a violation. of such fiduciary obligation if such director acts in accordance with federal law and regulations" (Mental Hygiene Law § 33.07 [e], as amended by L 2010, ch 111). The Legislative history for these amendments indicates they were intended to "clarify" a facility director's authority under Mental Hygiene Law §§ 29.23 and 33.07 (e) (see Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 111).

In an order dated September 27, 2010, the Court of Claims granted the State's motion for summary judgment dismissing the amended claim. The Court of Claims concluded that Mental Hygiene Law former § 29.23 did not apply to Social Security benefits since "the entire section, read in context, cannot be interpreted as advanced by claimants, i.e., as an implied mandate that all funds received, including those received pursuant to federal law which are intended to meet the basic needs of persons covered by the Social Security Act, must be used in the first instance for luxuries, comforts, necessities and burial expenses." The Court of Claims also explained that this reading of the statute is confirmed by the Legislative history of the recent amendments to Mental Hygiene Law §§ 29.23 and 33.07 (e), which indicates that the amendments were intended merely to "clarify" a director's authority under those sections, and not to alter existing substantive law.

The Court of Claims further determined that the application of the claimants' benefits to their facility charges did not violate the representative payee's fiduciary duty under Mental Hygiene Law former § 33.07 (e). In this regard, the Court of Claims reasoned that application of the claimants' Social Security benefits to the cost of their care and maintenance was consistent with federal law, and served the purpose for which the benefits were intended. In this regard, the Court of Claims relied on *Washington State Dept. of Social & Health Servs. v Guardianship Estate of Keffeler* (537 US 371 [2003]). In *Keffeler*, the Washington State Department of Social and Health Services (hereinafter DSHS) acted as the representative payee for children in foster care receiving Social Security benefits. DSHS ap-

plied some of the children's benefits to reimburse itself for the cost of foster care (*id.* at 378-379). The children commenced an action against the State of Washington, asserting that such use of their benefits violated 42 USC § 407 (a), which provides, in part, that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." The United States Supreme Court, in *Keffeler*, determined that 42 USC § 407 (a) did not prohibit DSHS from using some the children's Social Security benefits to reimburse itself for the cost of their care, since such use did not involve "execution, levy, attachment [or] garnishment," and could not be considered a "legal process" (42 USC § 407 [a]). The United States Supreme Court also held that DSHS did not violate a fiduciary duty by using the beneficiaries' benefits to reimburse itself for the cost of their care and maintenance, and that such use is not contrary to the beneficiaries' best interests (*see Washington State Dept. of Social and Health Servs. v Keffeler*, 537 US at 389-391).

The Court of Claims concluded that *Keffeler* undermined the reasoning and holding of *Muller.* It also determined that the *Muller* Court's interpretation of the relevant statutory provisions leads "to a result inconsistent with the statutory purpose and scheme, and would create a sweeping category of exempt property funded by federal benefits which cannot be used for their intended purposes." Additionally, the Court of Claims noted that the Court of Appeals denied leave in *Muller* and, thus, "*Muller* is not the final interpretation of the statute." Accordingly, the Court of Claims granted the State's motion for summary judgment dismissing the amended claim. The claimants appeal. We affirm.

Initially, although the Court of Claims was bound by the doctrine of stare decisis to follow the determination of the Fourth Department in *Muller* to the extent that the holding of *Muller* was not undermined by *Keffeler*, we are not so bound (*see Mountain View Coach Lines v Storms*, 102 AD2d 663, 664-665 [1984]) and, for the reasons that follow, we decline to adopt the Fourth Department's interpretation of Mental Hygiene Law former §§ 29.23 and 33.07 (e).

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [internal quotation marks and citations omitted]).

At the time that the claimants filed the instant claim, Mental Hygiene Law § 29.23 provided that:

"The commissioner may authorize the directors of department facilities, to receive or obtain funds or other personal property, excepting jewelry, due or belonging to a patient who has no committee, up to an amount or value not exceeding five thousand dollars . . . Such funds . . . shall be placed to the credit of the patient for whom received and disbursed on the order of the director, to provide, in the first instance, for luxuries, comforts, and necessities for such patient, including burial expenses, and, if funds are thereafter available, for the support of such patient . . .

"Moneys belonging to a patient received by the director of such facility pursuant to law shall be received by him in his official capacity as such director and such receipt shall be deemed an exercise or performance by him of a power and duty duly conferred by this section" (Mental Hygiene Law former § 29.23).

We conclude that the phrase, "[t]he commissioner may authorize the directors of department facilities, to receive or obtain funds or other personal property" (id.), evinces the Legislature's intent that, at the time that the claimants filed the instant claim, the statute did not apply to Social Security benefits, inasmuch as the Social Security Act and its federal implementing regulations conferred the authority to approve and appoint representative payees for such benefits upon the Social Security Administration (hereinafter SSA) (see 42 USC § 405 [j]; § 1383 [a] [2] [A] [ii]; 20 CFR 416.601 et seq.). For the same reason, the language in the last sentence of Mental Hygiene Law former § 29.23, reciting that such funds are "received by [a facility director] in his [or her] official capacity as such director and such receipt shall be deemed an exercise or performance by him [or her] of a power and duty duly conferred by this section" (Mental Hygiene Law former § 29.23 [emphasis added]), does not apply to facility directors acting as representative payees pursuant to appointment by the SSA.

An examination of the legislative history of the Mental Hygiene Law supports this conclusion. The enactment of the predecessor to Mental Hygiene Law § 29.23 predates the enactment of the Social Security Act. The Legislature adopted the predecessor to Mental Hygiene Law § 29.23 in 1933 (see L 1933, ch 395). It set forth a $300 limit on the amount of funds the Commissioner could authorize superintendents of state institutions to receive on behalf of patients (see Mental Hygiene Law former § 34 [14] [L 1933, ch 395, as amended]). The old State Department of Mental Hygiene (hereinafter the Department)

prepared and introduced the bill in order to meet a perceived need to "persuade those who have possession of patients' property to surrender it" (Letter from Commr of St Dept of Mental Hygiene, Bill Jacket, L 1933, ch 395, at 4). The legislative history reflects that the Department's concern was spurred by an incident in which "a public official in Canada had money of a patient repatriated to New York State. He offered to give it up if we could show legal authority to receive it. The expenses of appointment, bond, accounting and discharge, in the opinion of the Attorney General, make committee proceedings impracticable if less than $300.00 is involved" (*id.*).

Thus, the initial purpose of the statute was to create a nonjudicial mechanism by which the Commissioner of the Department could authorize superintendents of state institutions to receive funds or other personal property due or belonging to patients so as to avoid the "expenses of appointment, bond, accounting and discharge" when only a nominal amount of money was involved (*id.*). However, since there now exists a procedure for the appointment of a facility director as the patient's representative payee for the purpose of receiving a patient's Social Security benefits, and is dictated by the Social Security Act and implementing regulations, there is no need for an additional mechanism authorizing a facility director to accept such benefits on behalf of the patient. Accordingly, facility directors appointed by the SSA to act as representative payees do not fall within the ambit of Mental Hygiene Law former § 29.23.

The claimants also contend that a facility director cannot act as a representative payee because of an inherent conflict of interest, and that by paying over their benefits to the facility for the cost of their care, their representative payees violated the fiduciary duty created by Mental Hygiene Law former § 33.07 (e). Mental Hygiene Law former § 33.07 (e) provided that "[a] mental hygiene facility which is a representative payee for a patient pursuant to designation by the social security administration or which assumes management responsibility over the funds of a patient, shall maintain such funds in a fiduciary capacity to the patient" (Mental Hygiene Law former § 33.07 [e]). The claimants argue that they were entitled to services without making such payments to the facility (*see* Mental Hygiene Law § 43.01 [a] ["no person shall be denied services because of inability or failure to pay a fee"]). However, the text of the Mental Hygiene Law former § 33.07 (e) does not support the claimants' contention. Indeed, that statute expressly acknowledged that a facility director may act as a representative payee for a patient pursuant to designation by the SSA.

Once the SSA appoints a representative payee pursuant to 42 USC § 405 (j) (1) (A), upon a determination that the interests of the beneficiary would be served thereby, the representative payee "has a responsibility to" use the payments for the beneficiary's "use and benefit in a manner and for the purposes [the representative payee] determines, under the guidelines in this subpart, to be in [the beneficiary's] best interests" (20 CFR 404.2035 [a]). Under the applicable federal regulations, payments are considered to "have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items" (20 CFR 404.2040 [a] [1]). "If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, *current maintenance includes the customary charges made by the institution*, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution" (20 CFR 404.2040 [b] [emphasis added]). "After the representative payee has used benefit payments consistent with the guidelines . . . any remaining amount shall be conserved or invested on behalf of the beneficiary. Conserved funds should be invested in accordance with the rules followed by trustees" (20 CFR 404.2045 [a]). In enacting Mental Hygiene Law former § 33.07 (e), the Legislature was presumably aware that, pursuant to the foregoing regulations, a representative payee may apply the beneficiary's benefits to the cost of his or her care. Yet the Legislature did not proscribe such expenditures. As such, the application, by a representative payee, of a portion of a patient's Social Security benefits to the cost of that patient's care was not, in and of itself, a violation of the representative payee's fiduciary obligation under Mental Hygiene Law former § 33.07 (e).

The parties' remaining contentions either have been rendered academic in light of our determination, are not properly before this Court, or are without merit. Mastro, A.P.J., Angiolillo, Balkin and Chambers, JJ., concur. **[Prior Case History: 30 Misc 3d 179.]**