McDowell v State of New York (2026 NY Slip Op 50247(U))

[*1]

McDowell v State of New York

2026 NY Slip Op 50247(U)

Decided on January 2, 2026

Court Of Claims

Marnin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 2, 2026
Court of Claims

Emel McDowell Claimant,

againstThe State of New York, Defendant.

Claim No. 139027

For Claimant:CUOMO LLCBy: Matthew A. Cuomo, Esq.For Defendant:HON. LETITIA JAMES, NEW YORK STATE ATTORNEY GENERALBy: Antonella Papaleo, Esq. 
Assistant Attorney General

Seth M. Marnin, J.

Claimant Emel McDowell [FN1]
filed a claim pursuant to Court of Claims Act § 8-b. Now before the Court is defendant State of New York's motion to dismiss. Claimant opposes the motion and cross-moves for summary judgment.
BACKGROUND AND PROCEDURAL HISTORYMr. McDowell, then a 17-year-old honors student, was arrested and convicted by a jury [*2]in 1992 for the shooting death of Jonathan Powell following a police investigation that lasted less than 24 hours, despite conflicting witness statements. (NY St Cts Elec Filing ["NYSCEF"] Doc No. 9 at 1, ¶ 2; NYSCEF Doc No. 45 at 10, ¶ 34; NYSCEF Doc No. 82 at 5.)[FN2]
The indictment, 12088/90, included four counts: two counts of murder in the second degree (direct and transferred intent), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. (NYSCEF Doc No. 10.) Prior to trial, Mr. McDowell rejected a plea offer. (NYSCEF Doc No. 14 at 10.) A jury found Mr. McDowell guilty of murder in the second degree and criminal possession of a weapon in the second degree.[FN3]
The jury also found Mr. McDowell guilty of criminal possession of a weapon in the third degree, however the third-degree weapon possession conviction was set aside by the judge. (NYSCEF Doc No. 14 at 13, n 41.) Mr. McDowell was sentenced to 22 years-to-life for murder in the second degree and received a concurrent sentence of 3 to 9 years for the weapons charge. (NYSCEF Doc No. 9 at 1, ¶ 2; NYSCEF Doc No. 11 at 3, ¶ 3.) Mr. McDowell served more than 19 years in prison. (NYSCEF Doc No. 12.)
Maintaining his innocence throughout,[FN4]
in 2007, Mr. McDowell filed a motion to vacate the conviction based on newly discovered evidence (CPL 440.10 [1] [g]) and ineffective assistance of counsel (CPL 440.10 [1] [h]). (NYSCEF Doc No. 11.) In 2009,[FN5]
the Supreme Court granted a hearing to evaluate whether the evidence, including witness affidavits and a letter that suggested that its author, and not Mr. McDowell, was responsible for the shooting, constituted newly discovered evidence. (NYSCEF Doc No. 36.) When the CPL § 440 hearing commenced before the Honorable John Ingram, the Assistant District Attorney attempted to present what were purported to be crime scene photos that had been taken only days before the hearing. (NYSCEF Doc. No. 9 at 2, ¶ 5.) They were being offered in support of sustaining the conviction [*3]despite the fact that there was evidence in the record that the crime scene had been entirely demolished. (NYSCEF Doc. No. 9 at 2, ¶ 5.) Mr. McDowell had obtained the actual crime scene photos through a FOIL request and shared them with the Assistant District Attorney. (NYSCEF Doc. No. 9 at 2, ¶ 5.) After taking a short recess to review the photos and inconsistencies in the grand jury testimony, the Assistant District Attorney offered Mr. McDowell a take-it-or-leave-it plea deal, 9 days before his birthday and 11 days before Christmas. (NYSCEF Doc No. 9 at 3-4, ¶¶ 6-8.)
The offer, reversal of Mr. McDowell's original conviction, was conditioned on Mr. McDowell pleading guilty to manslaughter in the first degree and agreeing to testify that he had been armed and acted in concert with at least two others to shoot Mr. Powell. (NYSCEF Doc No. 37 at 8-11.) That is, in exchange for Mr. McDowell's guilty plea and waiving all rights to appeal the conviction and sentence or make any application to vacate the conviction, his 1992 conviction would be vacated. He would be resentenced by the Court to six-to-eighteen years and, after being remanded to custody briefly for a final calculation of time served, released having already served more than 18 years. (See generally NYSCEF Doc No. 37 at 8-11.) If he chose not to accept the plea, Assistant District Attorney Ken Taub said he would retry Mr. McDowell, that he would oppose bail, and Mr. McDowell would be remanded pending the retrial of his case. (NYSCEF Doc No. 52 at 86.) Mr. McDowell initially rejected the deal. (NYSCEF Doc, No. 9 at 2, ¶ 6; NYSCEF Doc No. 52 at 82-83; NYSCEF Doc No. 80 at 4-5, ¶¶ 21-22.) Ultimately, however, he agreed to the plea because he felt he had "no option." (NYSCEF Doc No. 52 at 87.) Mr. McDowell stated on the record that, armed with a weapon, he acted in concert with two others and was involved in a shooting that caused the death of John Powell. (NYSCEF Doc No. 37 at 12-19.) That is, having just experienced the Assistant District Attorney's misrepresentations concerning the photos, Mr. McDowell took the plea deal because he thought that if he did not, he "would spend the rest of [his] life in prison for something [he] didn't do." (NYSCEF Doc No. 52 at 96.)
Mr. McDowell and his counsel subsequently asked the Kings County District Attorney's Conviction Review Unit ("CRU") to reinvestigate the case. (NYSCEF Doc No. 9 at 4, ¶ 13.) The CRU did so. In addition to finding that the initial police investigation was inadequate, the individual responsible for the shooting, Baron Blount, confessed. The confession was made in the presence of his attorney. (NYSCEF Doc No. 14 at 26.) Based on the reinvestigation, including numerous witness interviews and the confession of the individual responsible for the shooting, the CRU, the Independent Review Panel, and the Kings County District Attorney agreed that the manslaughter conviction should be vacated and the indictment dismissed. (NYSCEF Doc No. 14 at 31.)
Following the completion of the CRU investigation and report, Mr. McDowell moved to vacate the judgment of conviction pursuant to CPL 440.10 (1) (g), based on newly discovered evidence, CPL 440.10 (h), actual evidence, and/or because "it was the product of duress," pursuant to CPL 440.10 (1) (b).[FN6]
(NYSCEF Doc No. 92 at 2.) The motion papers describe Mr. [*4]McDowell having "succumbed to the pressure and accepted the plea." (NYSCEF Doc No. 92 at 5, ¶ 8.)
The transcript of the 2023 CPL 440 hearing before the Honorable Matthew D'Emic reflects that both Mr. Michelen and Ms. Kalman from the District Attorney's Office described Mr. McDowell's application to have been made pursuant to CPL § 440.10 (1) (g) and (h). (NYSCEF Doc No. 82 at 2-3; 9.) However, Mr. Michelen's oral motion to the Court reflected that they were there "to vacate the previous conviction on this matter that was entered based on Mr. McDowell's plea and sentencing and to also move to dismiss the indictment upon the vacature of the plea." (NYSCEF Doc No. 82 at 3-4 [emphasis added].) Assistant District Attorney Rachel Kalman, on behalf of the Office of the District Attorney, then, in describing the background of the case and CRU's investigation, explained that Mr. McDowell "[u]nderstandably" accepted the manslaughter deal in order to be immediately released from prison. (NYSCEF Doc No. 82 at 6.) Mr. Michelen spoke at length during the exoneration proceedings before Justice D'Emic about innocent people pleading guilty to crimes and characterizing the circumstances under which Mr. McDowell accepted the plea as "involuntary" and coercive with respect to the "take-it-or-leave-it plea" he was offered. (NYSCEF Doc 82 at 7-8.) The transcript of the proceedings reflects that, "based on the record made before me this morning," the Court granted the motion to vacate the conviction and dismissed and sealed the indictment. (NYSCEF Doc No. 82 at 9.) The Court did not reference CPL § 440.10 on the record when he rendered his decision. In a brief decision and order following, Justice D'Emic granted Mr. McDowell's motion, the conviction and sentence were vacated, and the indictment was dismissed on March 16, 2023, pursuant to CPL § 440.10 (1) (g) and (h). (NYSCEF Doc No. 13.)
Less than a month later, Mr. McDowell timely filed and served a claim for unjust conviction and imprisonment under section 8-b of the Court of Claims Act. (NYSCEF Doc Nos. 1-6 [Claim]; NYSCEF Doc Nos. 9-14 [Amended Claim].) The State answered, generally denying the allegations and asserting four affirmative defenses. (NYSCEF Doc No. 18.)
The MotionsPresently before the Court are defendant's motion to dismiss the claim and claimant's cross-motion for summary judgment. (NYSCEF Doc Nos. 33-39; 44-94; 96-102.) The State has moved to dismiss, pursuant to the Court of Claims Act § 8-b (4) (a) and CPLR 3211 (a) (7),[FN7]
[*5]arguing that the claim fails to state a cause of action and that claimant will not be able to prove at trial that he did not commit any of the acts charged in the indictment. (NYSCEF Doc No. 34 at 6, ¶ 19.)
The State argues that Mr. McDowell's acceptance of the plea deal and his statement on the record that, armed with a weapon, he acted in concert with two others and was involved in a shooting that caused the death of John Powell, means that he cannot meet Claims Act § 8-b (4)'s strict requirements. (NYSCEF Doc No. 34 at 8, ¶ 24.) Claimant's admission to being in possession of a gun in particular, the State explains, a charge included in the original indictment, demonstrates that he cannot prove that he did not commit any of the acts included in the accusatory instrument, as required by Court of Claims Act § 8-b (4). (NYSCEF Doc No. 34 at 11-12, ¶ 32; see also NYSCEF Doc No. 96 at 3, ¶ 5.) Further, the State insists, while the plea to the lesser charge of manslaughter "contemplates a different theory of criminal liability," it "constitutes an admission to conduct charged" in the indictment. (NYSCEF Doc No. 34 at 11-12, ¶ 32.) The State also highlights Baron Blount's confession as evidence that Mr. McDowell cannot sustain his burden to demonstrate that he did not commit any of the acts charged in the indictment. Blount's confession included the accusation that Mr. McDowell had a gun the evening of Mr. Powell's murder which was not only a count in the indictment but also corroborates Mr. McDowell's allocution that he was armed with a weapon that evening. (NYSCEF Doc No. 34 at 12-13, ¶ 35.)
The State also argues in its motion that Mr. McDowell "cannot collaterally attack the validity of his plea here." (NYSCEF Doc No. 34 at 14.) The State argues that Mr. McDowell's assertion that he "did nothing to cause his own conviction" (NYSCEF Doc No. 9 at 7, ¶ 27) is contradicted by his plea and that he cannot now, for the first time, argue that the plea was coerced. To the extent that Mr. McDowell wanted to challenge the validity of his plea, the State maintains, he needed to either move pursuant to CPL 220.60 (3) or file a motion to vacate the conviction under CPL 440.10. (NYSCEF Doc No. 34 at 14-16, ¶¶ 38-41.) Finally, the State asserts that the 2023 order vacating the manslaughter conviction is not proof of innocence. (NYSCEF Doc No. 34 at 16-22, ¶¶ 42-54.)
Mr. McDowell opposes the motion, characterizing it as premature and procedurally flawed. Mr. McDowell argues that his verified claim and its attachments, including the CRU Report, indictment, 2007 CPL 440.10 motion, 2023 decision and order vacating his conviction, and calculation of time served provide sufficient detail to allow the Court to conclude that he is likely to succeed at trial in proving his innocence and that he did not cause or bring about the conviction, as required by Court of Claims Act § 8-b (4). (NYSCEF Doc Nos. 9-14.) Mr. McDowell maintains that because the plea deal he accepted to be released from prison after serving more than 19 years was coerced and is belied by his consistent assertions of innocence, it does not bar recovery under the statute. (NYSCEF Doc No. 94 at 11-16.) Moreover, the claimant's allocution that he acted in concert with at least two others to shoot the victim was neither an admission to either of the murder in the second-degree counts found in the original indictment nor an admission to manslaughter. (NYSCEF Doc No. 94 at 11-12.) Further, claimant maintains that because the fourth count of the indictment, criminal possession of a weapon in the third degree, was "dismissed by the trial court on May 22, 1992 and never was part of nor challenged on any of the criminal appeals" defendant's arguments as they relate to this charge are misplaced. (NYSCEF Doc No. 94 at 10.)
Mr. McDowell also disputes defendant's argument that, in asserting that his plea was [*6]involuntary, he is attempting to collaterally attack the validity of his plea which should have been done with a motion pursuant to CPL 440.10. (NYSCEF Doc No. 94 at 16-24.) To succinctly summarize claimant's argument here: he already did that and won. There were two CLP 440.10 motions. The first CPL 440.10 motion resulted in a hearing being scheduled and, instead of going forward, concluded with a plea allocution that resulted in the trial conviction and sentence overturned and a new sentence of 6 to 18 years imposed, amounting to time served. But the second CPL 440.10 motion, brought by Mr. McDowell and unopposed by the People following a lengthy investigation by the CRU, resulted in his motion "to vacate the previous conviction on this matter that was entered based upon Mr. McDowell's plea and sentencing and to also move to dismiss the indictment upon the vacature of the plea" being granted and the indictment being dismissed. (NYSCEF Doc No. 82 at 2-3; 6-9.) The transcript of this proceeding, claimant argues, recognizes the involuntariness of his plea. (See NYSCEF Doc No. 82 at 6-8 ["Understandably, the defendant accepted the deal"; "innocent people plead guilty to a crime and our system"; "involuntary circumstances and coercion as existed back at the time when Mr. McDowell was given his take-it-or-leave-it plea on the day to get his freedom."].) At the conclusion of the 2023 hearing, the conviction was vacated and the indictment dismissed. (NYSCEF Doc No. 82 at 9.) Moreover, claimant argues, he has always maintained his innocence.
Finally, Mr. McDowell rejects the defendant's argument that he has not established his innocence. (NYSCEF Doc No. 94 at 28-26.) Claimant argues that both the trial conviction and the conviction that was as a result of the coerced plea deal, were vacated — the first by operation of the plea deal and the second, as characterized in Justice D'Emic's Decision and Order, pursuant to 440.10 (g) and (h). (NYSCEF Doc No. 94 at 28.) Furthermore, claimant maintains, the CRU, having conducted an independent review of the convictions, concluded by clear and convincing evidence, that he was innocent of all charges. (NYSCEF Doc No. 45 at 32-33, ¶¶ 94-97; NYSCEF Doc No. 94 at 23-24; 28.)
Incorporated into Mr. McDowell's opposition to the State's motion to dismiss, claimant argues that he is entitled to summary judgment because he has demonstrated that he has met all the requirements of Court of Claims Act § 8-b. (NYSCEF Doc No. 94 at 29-32.) He maintains that there is no admissible evidence that the State could offer to refute the documentary proof submitted in opposition to the State's motion. (NYSCEF Doc No. 94 at 29-32.)
In response to the claimant's opposition to the motion to dismiss, the State reemphasizes that claimant's manslaughter plea is fatal to his ability to meet the requirements of Court of Claims Act § 8-b (4). (NYSCEF Doc No. 96 at 3, ¶ 5.) The State insists that claimant is "mistaken" in his assertion that when his conviction was vacated and the indictment dismissed in 2023 it "erased" his plea. (NYSCEF Doc No. 96 at 4, ¶ 7.) Defendant argues that Justice D'Emic's Decision and Order is silent on the issue of whether Mr. McDowell's plea was as a result of duress or coercion. (NYSCEF Doc No. 96 at 4-6, ¶¶ 9-12.) Defendant accuses claimant of "attempting to escape" the caselaw the State relies on in support of its argument that claimant may not collaterally attack the plea. His efforts to distinguish this claim fail, says the State, reiterating that the December 2009 plea was never vacated and that claimant's arguments that he was coerced by the prosecutor into taking the plea should have been raised during the vacatur proceedings, but "clearly" they were not. (NYSCEF Doc No. 96 at 7, ¶ 14.)
In its opposition to claimant's motion for summary judgment, the State argues that the motion is procedurally defective because claimant did not attach a copy of the pleadings in [*7]support of his motion and that the motion is premature because discovery is not yet complete. (NYSCEF Doc No. 96 at 13-14, ¶¶ 25-27.) Defendant further argues that claimant has failed to make a prima facie showing that there is no issue of material fact and that he is therefore not entitled to summary judgment. (NYSCEF Doc No. 96 at 14-15, ¶ 28.) The State maintains that there are numerous issues of fact that would require denying the motion. (NYSCEF Doc No. 96 at 15-18, ¶¶ 29-35.) In reply, claimant maintains that his failure to include the pleadings may be excused, observes that the State did not attach the claim to its motion to dismiss, and that because this motion would be denied without prejudice, in the interest of judicial economy, the Court should allow the motion to proceed rather than have the parties refile. (NYSCEF Doc No. 100 at 1-2, ¶¶ 3-5.) Further, in response to the State's arguments concerning the timing of the motion, claimant maintains that the defendant cannot use the absence of a Note of Issue to argue that the motion is premature because that is, in essence, the State's fault because the Court adjourned the deadline when the State filed its motion to dismiss. (NYSCEF Doc No. 100 at 2-3, ¶¶ 6-8.) Finally, claimant maintains that he has demonstrated that he has established that there are no genuine issues of fact that remain. (NYSCEF Doc No. 100 at 3-4, ¶¶ 9-15.)
THE LAW AND ANALYSISAs an initial matter, concerning the claimant's argument that the State's motion to dismiss is premature, Section 8 of Article II of the Court of Claims Act provides that the State "waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article." (Alston v State of New York, 97 NY2d 159, 163 [2001] [emphasis in original] [internal quotation marks omitted].) The Court of Appeals has explained that the plain language and legislative history of the Court of Claims Act compel the conclusion that compliance with Article II of the Court of Claims Act is required to secure jurisdiction; that is, the State's waiver of sovereign immunity is conditioned on compliance with the Act. (Alston v State of New York, 97 NY2d 159, 164 [2001] [failure to timely file as required by Court of Claims Act § 10 (4) is a jurisdictional defect]; see also Lepkowski v State of New York, 1 NY3d 201, 206 [2003] ["The State's waiver of immunity from suits for money damages is not absolute, but rather is contingent upon a claimant's compliance with specific conditions placed on the waiver by the Legislature"]; Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992] [because lawsuits against the State are permitted solely because the State has waived sovereign immunity, statutory requirements for "suit must be strictly construed," and claimants who fail to meet the "literal" jurisdictional requirements of the Court of Claims Act have not properly commenced their claims]; see also Lichtenstein v State of New York, 93 NY2d 911, 913 [1999] [claim dismissed as jurisdictionally defective for failing to comply with Court of Claims Act § 10 (2)].)
This Court has previously concluded that, like Court of Claims Act § 11 (b), the requirements of section 8-b of the Court of Claims Act are also jurisdictional and nothing less than strict compliance is required. (Matter of Laverpool v. State of New York, 87 Misc 3d 1209[A], 2025 NY Slip Op 51506[U]*2 [Ct Cl 2025].) Because these requirements are jurisdictional in nature, they may not be waived, and a jurisdictional defect may be raised at any time, even sua sponte by the Court. That is, a motion to dismiss may be brought in lieu of an answer, following the answer, and may even be raised for the first time on appeal because it relates to the ability of this Court to consider the claim. (Caci v State of New York, 107 AD3d 1121, 1122 [3d Dept 2013].) That is all to say that claimant's assertion that the State's motion to [*8]dismiss is premature is misplaced.
Defendant's Motion to DismissTurning now to defendant's motion to dismiss, the governing standard under Court of Claims Act § 8-b is the same as any other claim before this court. (Warney v State of New York, 16 NY3d 428, 435 [2011].) Accordingly, when reviewing a motion to dismiss pursuant to CPLR 3211 on the ground that the claim fails to state a cause of action, the pleading is to be afforded a liberal construction. (See CPLR 3026; see also Leon v Martinez, 84 NY2d 83, 87-88 [1994].) The Court may review the claim and its attachments to determine whether or not it has sufficiently stated a cause of action. (See CPLR 3014 ["(a) copy of any writing which is attached to a pleading is a part thereof for all purposes"]; see also Matter of Lynch v Duffy, 172 AD3d 1370, 1373 [2d Dept 2019], lv denied 33 NY3d 906 [2019] [Exhibits attached to a claim may rescue it when challenged on insufficient pleading grounds]; Ross v State of New York, UID No. 2024-062-014 [Ct Cl, Chaudhry, J., May 20, 2024] [CPLR 3014 applies to 11 (b) requirements and the Court relied on the grievance attached to claim to find it sufficiently pled]; Trojak v State of New York, UID No. 2014-018-530 [Ct Cl, Fitzpatrick, J, July 30, 2014] [The claim and the attached police report were sufficient to meet the pleading requirements of 11 (b)].) The Court must also ignore any affirmation or affidavit submitted by defendant. (Valentino v County of Tompkins, 284 AD2d 898, 899 [3d Dept 2001].) Finally, unlike the jurisdictional issues raised in a motion to dismiss pursuant to the Court of Claims Act, when a defendant moves to dismiss a claim for failing to state a cause of action pursuant to CPLR 3211, in addition to the claim and its exhibits, the Court may also review reply affidavits by a claimant submitted to ameliorate any deficiencies in the claim. (Rushaid v Pictet & Cie, 28 NY3d 316, 327 [2016]; see Mirro v City of New York, 159 AD3d 964, 966 [2d Dept 2018].)
Notwithstanding the higher pleading standard imposed by Court of Claims Act § 8-b (4), the Court of Claims "should accept the facts as alleged in the claim as true." (Warney, 16 NY3d at 435 [internal citation, brackets, and quotation omitted].) Indeed, the Court of Appeals has warned that this is not the time to be making credibility and factual determinations. (Id.) Rather, if a claimant "makes detailed allegations with respect to the elements described in section 8-b (4) [they are] entitled to an opportunity to prove the allegations at trial." (Id.)
The Unjust Conviction and Imprisonment Act, codified as Court of Claims Act § 8-b, provides a way for "innocent persons who can demonstrate by clear and convincing evidence that they were unjustly convicted and imprisoned . . . to recover damages against the state." (Court of Claims Act § 8-b [1]; see also Warney, 16 NY3d at 434; Ivey v State of New York, 80 NY2d 474, 479 [1992].) Anyone "convicted and subsequently imprisoned for one or more felonies" may bring a claim. (Court of Claims Act § 8-b [2].) Claimants may avail themselves of the remedies offered under Court of Claims Act § 8-b if they meet its "strict pleading and evidentiary burdens." (Warney, 16 NY3d at 434.)
Court of Claims Act §§ 8-b (3) and (4) establish the pleading requirements for bringing an unjust conviction and imprisonment claim, supplanting the pleading requirements of Court of Claims Act § 11 (b). Section 8-b (3), in relevant part, requires a claimant, in order to "present" their claim, to "establish by documentary evidence" that they were convicted, sentenced, and served all or part of their sentence. (Court of Claims Act § 8-b [3] [a].) It also requires them to demonstrate by documentary evidence that they were pardoned, the conviction reversed or vacated, and the accusatory instrument dismissed, or that they were found not guilty when retried. (Court of Claims Act § 8-b [3] [b] [i]-[ii].) This section also identifies the grounds on [*9]which the conviction was vacated or reversed and the accusatory instrument dismissed in order to be eligible for relief under the statute. (Court of Claims Act § 8-b [3] [b] [ii].) Defendant's motion does not assert that claimant has failed to meet the requirements of Court of Claims Act § 8-b (3).
Court of Claims Act § 8-b (4), on the other hand, while not requiring documentary evidence, does require the claim to "state facts in sufficient detail" to allow the Court to conclude that the claimant will likely succeed at trial in proving that they did not commit any of the acts charged and did not, by their own conduct, cause their conviction. This is a higher pleading standard than is required by the CPLR. (Warney, 16 NY3d at 435 [The Court "must consider whether the allegations are sufficiently detailed to demonstrate a likelihood of success at trial."].) As noted above, the Court does not make credibility or factual determinations at this stage. (Id.) Said another way, at this juncture, the Court is accepting the facts as true and evaluating whether claimant has met the pleading requirements outlined in Court of Claims Act § 8-b (4) and provided enough detail in their claim to the allow the Court to find that claimant will be able to succeed at trial. This, the State argues, claimant has not done.
As recounted above, the State maintains that Mr. McDowell's claim fails to meet either prong of Court of Claims Act § 8-b (4). The State argues that because Mr. McDowell admitted to both possessing a gun and causing Mr. Powell's death when he took the plea deal, he will not be able to prove that he did not commit the acts charged in the original indictment. Moreover, the State argues, Mr. McDowell will not be able to demonstrate that he did not cause his own conviction because he took the plea deal and the plea deal remains unchallenged and may not be collaterally attacked here. Because he cannot meet the requirements of Court of Claims Act § 8-b (4), the State concludes, the court should dismiss the claim.
The CPL 440.10 MotionsThe plea deal that Mr. McDowell accepted in 2009 lies at the heart of defendant's argument, and the success of the State's motion hinges, primarily, on the 2023 CPL 440.10 motion decision. Therefore, in order to address the parties' arguments, the Court must first determine whether the 2023 CPL 440.10 decision vacated the 2009 plea and, if it did, on what grounds.
The State does not dispute that the original 1992 conviction by the jury was vacated by the 2009 plea deal. (See NYSCEF Doc No. 34 at 9, ¶ 27 ["ADA Taub went on the record and offered to consent to vacatur of McDowell's murder conviction"].) The 2009 plea transcript itself reflects that the application was to "vacate the previous convictions" and "that upon the vacatur of the [murder] conviction, Mr. McDowell would then plead guilty to manslaughter." (NYSCEF Doc No. 37 at 11.) Mr. McDowell was arraigned on the record and asked by the Clerk if he withdrew his "previously entered plea of not guilty to indictment 12088 of '90" and if he now "plead[s] guilty to the count of manslaughter in the first degree in full satisfaction of the indictment?" to which he responded in the affirmative. (NYSCEF Doc No. 37 at 19.) Moreover, at the conclusion of the 2009 hearing, the Court clarified, "The original conviction - - the defendant was originally convicted on three counts and now he is of course pleading guilty to the B felony, manslaughter in the first degree, one count; correct?" - to which both attorneys responded "Correct." (NYSCEF Doc No. 37 at 22.) It is therefore evident that the original conviction was vacated in 2009 by the plea deal.
The March 16, 2023 CPL 440.10 hearing commenced with claimant's attorney explaining to Justice D'Emic that Mr. McDowell's application was "to vacate the previous conviction on [*10]this matter that was entered based upon Mr. McDowell's plea and sentencing and to also move to dismiss the indictment upon the vacature of the plea" pursuant to CPL 440.10 (g) and (h). (NYSCEF Doc No. 82 at 2-3.) Assistant District Attorney Kalman, on behalf of the People, did not oppose the application to vacate "defendant's 2009 plea to manslaughter in the first degree" because after a full investigation "[t]here now exists no credible view of the evidence in which the defendant acted in concert to cause the death of Jonathan Powell," and also asked that the indictment be dismissed. (NYSCEF Doc No. 82 at 6-7.) Claimant's attorney spoke at length about Mr. McDowell having pleaded guilty and the importance of evaluating whether a plea is taken voluntarily or involuntarily as a result of coercion that "existed back at the time when Mr. McDowell was given his take-it-or-leave-it plea." (NYSCEF Doc No. 82 at 7-8.) Justice D'Emic concluded the hearing finding that "[b]ased on the record made before me this morning, the defense motion to vacate the judgment of conviction is granted, and based upon the People's further representation that they cannot prove guilt beyond a reasonable doubt, the indictment is dismissed." (NYSCEF Doc No. 82 at 9.) Justice D'Emic's Decision and Order dated the same day reiterates that the court heard defendant's oral motion to vacate and the People's consent "pursuant to C.P.L. § 440.10(1)(g) and (h)" and vacated the conviction and dismissed the indictment. (NYSCEF Doc No. 39 at 1.) The record is clear. The motion papers expressly include CPL 440.10 (1) (b) and argue that the CPL 440.10 motion sought to vacate Mr. McDowell's guilty plea that was the product of duress. The transcript of the hearing before the vacating court specifically addressed the plea deal (NYSCEF Doc No. 82). Further, the original conviction had already been vacated by the plea deal. From these, it is evident that Justice D'Emic considered Mr. McDowell's plea, heard from counsel that it was made under duress, and that the 2023 CPL 440.10 hearing vacated Mr. McDowell's 2009 plea to manslaughter.
Defendant's arguments that claimant is attempting to collaterally attack his plea here, that he has not previously challenged the voluntariness of his plea or alleged that it was made under duress, and that the plea "remains undisturbed," are unsupported by the record and are without merit. Further, defendant's argument that Justice D'Emic's decision "by operation of law" somehow relates back to Mr. McDowell's 1992 post-trial decision (NYSCEF Doc No 34 at 17, ¶ 44) is unfounded. The State offers no case law in support of this creative theory. And while this Court certainly does not disagree that CPL 440.10 (1) (g) explicitly references "[n]ew evidence [that] has been discovered since the entry of a judgment based upon a verdict of guilty after trial," the record simply does not support the State's conclusion.
There are two primary problems with the State's argument. First, as discussed supra at 15-16, it is without question that the 1992 post-trial decision had already been vacated in 2009. Defendant has presented nothing to the Court that would even suggest that a previously vacated decision could be vacated a second time. Second, the transcript of the 2023 CPL 440.10 hearing references the 1992 trial precisely once and does so merely in passing by Assistant District Attorney Kalman. (NYSCEF Doc No. 82 at 5:11 ["Now, in 1991, shortly before trial commenced"].) The Court can therefore not accept the State's argument that Justice D'Emic's 2023 CPL 440.10 decision on the record or written decision and order vacated the 1992 post-trial decision. It vacated the 2009 plea on the grounds stated (CPL 440.10 [1] [g] and [h]) with extensive discussion on the record concerning the grounds found in CPL 440.10 (1) (b) and (g). The Court cannot ignore the record. (See Coakley v State of New York, 150 Misc 2d 903, 908 [Ct Cl 1991], affd, 225 AD2d 477 [1st Dept 1996] [although the Court of Claims may "say that a vacating court or reversing tribunal did things for reasons in addition to those stated, that is not [*11]to say that we can ignore that which was done or the reasons given for doing it."].) While the State may believe that it was incorrect or improper for the vacating court to decide the motion pursuant to CPL 440.10 (1) (g), the proper way to address that would have been on appeal. Moreover, in order to reach the conclusion defendant urges, this Court would be deciding that the vacating court's decision was in error. However, reviewing the correctness of other court's decisions falls outside the subject matter jurisdiction of the Court Claims. (See generally Court of Claims Act § 9; Walker v State of New York, 151 AD3d 1147, 1148 [3d Dept 2017] [Court of Claims lacks subject matter jurisdiction to review alleged errors committed in other courts].) More succinctly, defendant cannot collaterally attack the vacating court's decision here.
In reaching this conclusion, the Court relies, in part, on Cooper v State of New York, 236 AD3d 749 (2d Dept 2025). In Cooper, a claim brought pursuant to Court of Claims Act § 8-b, the vacating court did not specify under which subdivision of CPL 440.10 (1) it was vacating the judgment of conviction. On a motion to dismiss the claim, the State argued that the conviction had not been vacated under an enumerated ground as required for relief under the Court of Claims Act § 8-b. The Appellate Division, Second Department determined that where a vacating order does not specify which subdivision of CPL 440.10 the conviction is being vacated, the claimant "may submit extrinsic evidence of the court's 'actual basis' for vacating the judgment of conviction." (Cooper, 236 AD3d at 749, quoting Jeanty v State of New York, 175 AD3d 1073, 1075 [2019].) Although the Second Department was considering whether claimant had met the requirements of Court of Claims Act § 8-b (3), requiring evidence submitted in support of claim, which is not at issue here, their reasoning is instructive. Particularly when read alongside Jeanty, it is appropriate for this Court to consider the hearing testimony that Justice D'Emic relied on at the 2023 CPL 440 hearing (NYSCEF Doc No. 82) along with the claimant's motion papers that identify CPL 440.10 (1) (g) and CPL 440.10 (b) in seeking an Order to vacate the conviction due to newly discovered evidence and because his guilty plea was the product of duress (NYSCEF Doc No. 92 at 2, ¶ 1). Based on this evidence, and for the purposes of this motion, the court concludes that hearing court vacated the manslaughter conviction because plea deal was coerced and based on new evidence, the confession of the actual shooter.
While this conclusion implicitly addresses the State's argument that Mr. McDowell is attempting to collaterally attack the validity of his plea here, the Court will directly address the parties' arguments on this issue, particularly concerning the relevance and applicability of Wiggins v State of New York (UID No. 2019-049-029, Weinstein, J., Aug. 26, 2019). Unsurprisingly, the parties disagree. The State argues that Wiggins is controlling law and that, where the validity of an earlier plea was not previously considered, the plea remains undisturbed, and the claim must be dismissed under § 8-b (4) (a). (NYSCEF Doc No. 34 at 14, ¶ 38.) Claimant, on the other hand, insists that Wiggins is inapplicable for the proposition the State asserts in support of its motion to dismiss, but maintains it is helpful to his motion for summary judgment. (NYSCEF Doc No. 94 at 17.) Although Wiggins is not binding on this Court, it is instructive. (See Weaver v State of New York, 91 AD3d 758, 761 [2d Dept 2012], lv denied 19 NY3d 804 [2012]; Mountain View Coach Lines v Storms, 102 AD2d 663, 664-665 [2d Dept 1984]; Collins v State of New York, UID No. 2016-015-193 [Ct Cl Collins, J., Dec. 6, 2016] [court not bound to follow as precedent a point established by courts of coordinate jurisdiction].)
In Wiggins, the State moved to dismiss the claim pursuant to Court of Claims Act § 8-b (3). The State argued that the grounds for the dismissal of Wiggins' indictment — a Constitutional violation — are not included in the Court of Claims Act and therefore the claim must be [*12]dismissed. The first section of the Wiggins decision, on which the State primarily relies in its papers (see, for example, the State's characterization of the holding [NYSCEF Doc No. 96 at 5, ¶ 10]), addresses the deficiencies of the Wiggins claim solely under § 8-b (3). Here, however, the motion to dismiss was only raised pursuant to Court of Claims Act § 8-b (4). Therefore, defendant's reliance on this section of the Wiggins decision is misplaced.
It is in the second section of the Wiggins decision that Judge Weinstein addresses, sua sponte, the viability of the Wiggins' claim under Court of Claims Act § 8-b (4). Here, he determined that Wiggins had failed to plead facts in the claim that would allow the Court to conclude that Wiggins was likely to succeed at trial in proving that he did not commit any of the acts charged in the indictment, as required by statute. Not only had Wiggins pled guilty to manslaughter and never challenged the plea as coercive or argued that it was made under duress before the trial court or on appeal, the claim itself did not allege that he was innocent of the charges. Rather, the claim only insisted that there was no evidence linking him to the crime. Mr. McDowell correctly observes that, unlike the claimant in Wiggins, Mr. McDowell included in his claim numerous assertions of his innocence. (See NYSCEF Doc No. 9 at 2, ¶ 6 [McDowell rejected the plea offer because he would not admit to shooting Powell because he did not shoot him and he would never accept parole for a crime he did not commit or have any involvement with]; 3, ¶ 8 [McDowell succumbed to the pressure and accepted the plea]; 4, ¶ 12 [McDowell has maintained his quest to prove his innocence]; 4, ¶ 13 [presentation of McDowell's innocence made to KCDA CRU]; 4, ¶ 15 [material provided to the CRU to establish McDowell's innocence]; 5, ¶ 19 [actual innocence established]; 7, ¶ 27 [the People are convinced McDowell was innocent]; and 8, ¶ 29 ["Claimant is an innocent man"].) Mr. McDowell's claim also discusses at length the circumstances under which someone who is innocent would accept a plea offer. (See NYSCEF Doc 9 at 3-4, ¶¶ 9-11.) Despite the parties' reliance on Wiggins, the Court finds it unhelpful in deciding these motions.
Turning to defendant's broader argument that claimant is "attempting to escape" the caselaw the State relies on in support of its argument that claimant may not collaterally attack the plea here, like the State's reliance on Wiggins, it is misplaced. The additional caselaw on which the State relies is similarly erroneous. Taking each case in turn, Menendez v State of New York (UID No. 2016-049-015, Weinstein, J., Apr. 8, 2016) concerns a medical malpractice and negligence claim against defendant. The claimant there alleged that, as a result of failing to properly treat and diagnose her, her mental health deteriorated which caused her to push someone in front of subway car causing the victim's death and which ultimately caused claimant to plead guilty to manslaughter. In considering the State's motion to dismiss, the Court found that the claim failed to meet the pleading requirements of Court of Claims Act § 11 (b) and that the alleged damages claimed stemmed from her arrest and conviction as established by her guilty plea. In response to claimant's argument that the Court should dispense with her plea, Judge Weinstein explained that the proper means to challenge a plea was either through a motion to withdraw the plea under CPL § 220.60 (3) or to vacate the conviction pursuant to CPL § 440.10. Similarly, in People v Lopez, the Court of Appeals held that, except where a trial court fails in its duty to ensure that a guilty plea is knowing and voluntary, the appropriate way to challenge a plea is under CPL § 220.60 (3) or CPL § 440.10. (71 NY2d 662, 665-666 [1988].) So too do People v Latham (90 NY2d 795, 798 [1997]), King v Albany County Pub. Defender's Off. (255 [*13]AD2d 770, 770 [3d Dept 1998]), and People v Clark [FN8]
(209 AD3d 1063, 1064 [3d Dept 2022]) address instances where a plea was not challenged appropriately with post-allocution motions. People v Larock (139 AD3d 1241, 1242 [3d Dept 2016]) is also a decision concerning a litigant who did not raise these issues in his motion to vacate. (NYSCEF Doc No. 34 at 15-16, ¶ 40.)[FN9]
But here, Mr. McDowell did move, pursuant to CPL § 440.10, to vacate his plea (NYSCEF Doc No. 9 at 5, ¶ 19). They are all therefore distinguishable.
Sufficiency of the Claim Pursuant to Court of Claims Act § 8-b (4)The Court now finally turns to the principal question of whether, as required by Court of Claims Act § 8-b (4), Mr. McDowell's claim and its attachments [FN10]
have offered "facts in sufficient detail" for the Court to conclude that he will likely be able to prove two things at trial: that "he did not commit any of the acts charged in the accusatory instrument" and that "he did not by his own conduct cause or bring about his conviction." As the Court of Appeals has warned, "[t]he task facing a claimant who attempts to assert a damages claim against the State under Court of Claims Act § 8-b is certainly not a simple one." (Reed v State of New York, 78 NY2d 1, 11 [1991].)
Again, for the purposes of a motion to dismiss, the Court accepts the facts alleged as true. (Warney, 16 NY3d at 435.) In order to evaluate whether the claim provides "facts in sufficient detail" to reach these conclusions, the first task must be to determine what acts were charged in the accusatory instrument. Exhibit A, attached to Mr. McDowell's First Amended Claim, was the indictment which included four counts: two counts of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. (NYSCEF Doc No. 10.) Claimant observes that "[c]ounts two and four of the indictment were dismissed," (NYSCEF Doc No. 45 at 10, ¶ 31) and that Mr. McDowell "was not ever convicted of [criminal possession of a weapon in the third degree] since [it] was dismissed." (NYSCEF Doc No. 94 at 11.) Claimant seems to suggest that he need only demonstrate in his claim that he did not commit counts one and three. (NYSCEF Doc No. 94 at 30 ["Mr. Mcdowell has shown that he has not committed any of the enumerated acts and d[i]d not commit any of the acts charged in the indictment. Recall that counts two and four of the indictment were dismissed after trial."].) The State does not share claimant's position. (NYSCEF Doc No. 34 at 12, ¶ 33 ["Section 8-b does not limit a claimant's burden to only the offenses for which he or she was unjustly convicted"].) Indeed, neither does the Court. The explicit language of the Court of Claims Act § 8-b (4) (a) requires sufficient detail in the claim to allow the Court to conclude that [*14]claimant will be able to prove at trial that "he did not commit any of the acts charged in the accusatory instrument." (Emphasis added.) There are no carve outs or exceptions identified in the statute. While the Appellate Division has identified instances where it is appropriate to consider crimes charged in an indictment as separate because they stemmed from separate events, that is not the case here. (See, e.g., Jones v State of New York, 167 AD3d 1365, 1367 [3d Dept 2018]; Dukes v State of New York, 167 AD3d 1360, 1361 [3d Dept 2018].) While the dismissal of counts two and four of the indictment may alter his burden pursuant to Court of Claims Act § 8-b (4) (b), that his own conduct did not "cause or bring about his conviction" (emphasis added), the dismissal is irrelevant to his obligation to demonstrate that he did not commit any of the acts alleged. Therefore, the claim must include "facts in sufficient detail" to permit the Court to conclude that he did not commit any of the four counts included in the indictment.
It is worth pausing here to address Dukes in more detail, and the extent to which the holdings are instructive, since both parties rely on this case in support of their arguments. The State relies on the 2017 Court of Claims decision to dismiss Mr. Dukes's claim in support of its assertions that claimant's plea precludes recovery and that claimant will need to prove he did not commit any of the acts included in the indictment. (NYSCEF Doc No. 34 at 8, ¶ 24 and 12, ¶ 33, citing Dukes v State of New York, UID No. 2017-038-581 [Ct Cl, DeBow, J., Nov. 13, 2017].) Claimant, on the other hand, relies on the Appellate Division's 2024 decision in support of its argument that a coerced confession is not a bar to recover under § 8-b. (NYSCEF Doc No. 94 at 14, citing Dukes v State of New York, 233 AD3d 1290 [3d Dept 2024].)
By way of background, Mr. Dukes was indicted on six counts related to robbery, burglary, and a subsequent murder. Mr. Dukes was acquitted of two counts and convicted by a jury of the remaining four (depraved indifference murder, burglary in the first degree, and robbery in the first and second degree). Claimant was sentenced to 37 ½ years and, after serving 18 years, someone else confessed to the murder. The convictions were vacated and the charges were reinstated. The People's motion to dismiss the murder charges was granted but the burglary and robbery charges survived. Mr. Dukes pleaded guilty to one count of robbery in the first degree and received a sentence that amounted to time served. (Dukes, 167 AD3d at 1361; Jones, 167 AD3d at 1365.) The claim brought in the Court of Claims pursuant to Court of Claims Act § 8-b was solely for the murder conviction. To the extent that Mr. Dukes alleged that he was coerced, he maintained that the police extracted a false confession to the murder. He did not allege that his plea to the robbery charge was coerced or made under duress.
The State moved to dismiss the claim, arguing that Mr. Dukes could not establish that he did not commit any acts included in the accusatory instrument as required by Court of Claims Act § 8-b. The Court granted the motion since the indictment included not only the murder charges but also the robbery and burglary charges and, because claimant had pled guilty to robbery, he would not be able to establish his innocence. On appeal, the Appellate Division concluded that on the unique facts presented, because the charges arose from what turned out to be two entirely separate events, first the burglary/robbery and then the subsequent, apparently unrelated, murder approximately four months later, the "accusatory instrument" for the crime that claimant was wrongfully convicted and imprisoned for (murder) was essentially distinct from the accusatory instrument related to the crime he pled guilty to (robbery). (Jones, 167 AD3d at 1367.) Therefore Mr. Dukes was not precluded from bringing the claim.
More than five years later, following a joint trial on Jones's and Dukes's § 8-b claims that [*15]concluded with the Court of Claims finding the State liable to Mr. Jones but not to Mr. Dukes, the Appellate Division considered Mr. Dukes's appeal. This second appeal concerned Mr. Duke's false confession before the criminal trial. Jones and Dukes both confessed to the police that they were present and implicated each other as the shooter. The Court of Claims had determined that Mr. Dukes failed to prove that his confession was not the product of coercion and it therefore barred recovery. However, the Appellate Division found the testimony presented at trial compelling and concluded that Mr. Dukes had been coerced into confessing to a crime he did not commit and that a false confession does not bar recovery under 8-b because it is not claimant's "own conduct" within in the meaning of the statute. Having determined that the confession was a product of undue coercion, it did not consider it when analyzing whether Mr. Duke had proved his innocence at trial. (Dukes, 233 AD3d at 1291-1295.)
Having now provided that background, it is evident that Dukes offers only limited guidance to this Court. It supports the assertion that Mr. McDowell must provide sufficient detail in his claim that he did not commit any of the acts charged in the accusatory instrument since, unlike Dukes, the charges in the indictment stem from only one incident. It also affirms that where a claimant can establish that a confession has been coerced, it is not a bar to recover under Court of Claims Act § 8-b. It does not, however, support the conclusion that because Mr. McDowell accepted a plea to get out of prison he is barred from recovery.
There are other distinctions that dimmish these decisions applicability here. In Dukes, there were no allegations that the plea deal that Mr. Dukes and Mr. Jones accepted on the robbery charge was coerced or made under duress. Indeed, there is no indication in any of the decisions to support the conclusion that either Dukes or Jones maintained they were innocent of that crime. The indictment, having been severed, made that question irrelevant to the case. Further, caution must be exercised in relying too heavily on the 2024 decision that followed a trial where the parties had an opportunity to develop the facts and offer witnesses. Here, discovery has not yet concluded and the Note of Issue has yet to be filed.
Turning back again to the motion at hand, the claim and its attachments offer sufficient detail that would permit the Court to conclude that Mr. McDowell will likely be able to prove by a preponderance of the evidence at trial that he was innocent of the crimes with which he was charged and that his own conduct did not cause or bring about his conviction. To paraphrase the Court of Appeals in Reed, only the confession of another person to the crime will enable to claimant to prove his innocence by clear and convincing evidence. (78 NY2d 1 at 11.) While obviously an exaggeration, that is the case here. The claim recounts in detail how the individual responsible for the shooting appeared before the CRU with an attorney and confessed to shooting the victim and to acting alone. (NYSCEF Doc No. 9 at 5, ¶ 17.) The CRU Report, attached to the claim as exhibit D, also provides extensive detail, and concludes that Mr. McDowell was innocent of the charges, including murder, manslaughter, and the gun charges. It recounts Mr. McDowell's videotaped Mirandized statement to an Assistant District Attorney which includes not only his recitation of what transpired the evening of the shooting, but that he also stated that "[he] did not have a gun." (NYSCEF Doc No. 14 [FN11]
at 9; see also, 19 [CRU's conclusion that [*16]"(McDowell) did not possess a gun, or act in concert with others to shoot the deceased"]; 20 [claimant's interview testimony that "(he) did not have a gun or see any guns at the party"; and 24 [Nicole Martin's statement that "[Mr. McDowell] "did not have a gun on him that night."].) The CRU report, as defendant notes, also included the actual shooter's description of what transpired that evening, including that claimant was in possession of a gun and was "pointing the gun at several partygoers' heads" (NYSCEF Doc No. 14 at 28, n 58.) However, the CRU appears to put little stock in that account and concludes that his description of claimant's conduct that night was not credible. (NYSCEF Doc No. 14 at 28, n 58.) According to the transcript of the 2023 CPL 440 hearing, "[Mr. McDowell] admitted to the detectives that he was at the party and that he was present in the immediate vicinity where the shooting occurred." (NYSCEF Doc No. 82 at 4:25-5:2.) The Court cannot conclude that merely being at a party contributed to his conviction.
Defendant's primary argument in its motion to dismiss is that Mr. McDowell's 2009 plea allocution is fatal to his claim of innocence and precludes recovery. The State maintains that Mr. McDowell's admission to first-degree manslaughter [FN12]
and his allocution that he acted in concert with two others while armed with a weapon to cause Mr. Powell's death means that he cannot prove that he did not commit any of the acts charged in the indictment as required by Court of Claims Act § 8-b (4) (a). (NYSCEF Doc No. 34 at 6-13.) This is so, the State maintains, because his plea was "presumptively voluntary" and inconsistent with innocence. Moreover, the State argues, Mr. McDowell's plea "remains undisturbed," having survived the 2023 vacatur. (NYSCEF Doc No. 34 at 16, ¶ 41.) The Court has already addressed the State's argument concerning the 2023 vacatur supra at 15-16 and finds these arguments unpersuasive. Moreover, the claim itself describes at length the circumstances under which Mr. McDowell experienced the plea deal as coercive and that he accepted it under duress. (NYSCEF Doc No. 9 at 2-11, ¶¶ 6-11; 6, ¶ 24 [counsel responded to the Assistant District Attorney's proposed plea offer "with a plea to not coerce Mr. McDowell"; "Mr. McDowell succumbed to the pressure and accepted the [*17]plea"; "he was coerced to take a guilty plea back in 2011 under conditions that were clearly not voluntary"].) The CRU Report attached to the claim also explained that the "CRU investigated defendant's claim that he was pressured to plead guilty to manslaughter, because he did not want to spend another day in prison for a crime he did not commit. He maintained that he (defendant) did not possess a gun, or act in concert with others to shoot the deceased." (NYSCEF Doc No. 14 at 19.) The CRU Report explicitly concluded that it was "apparent that under the unique facts presented here, which CRU learned during its investigation, defendant accepted the People's offer for freedom and in doing so was compelled to falsely admit to accomplice liability." (NYSCEF Doc No. 14 at 27.)
The Court therefore finds that claimant has sufficiently stated a cause of action. On the unique circumstances presented here, the convictions and indictment are inextricably linked. They cannot be considered independently. Mr. McDowell was convicted, sentenced, and subsequently served approximately 19 years. Both convictions were vacated—the 1992 convictions by the plea deal and the plea deal on grounds provided for in Court of Claims Act § 8-b—and the indictment was dismissed. The claim and its attachments have provided facts in sufficient detail to allow the Court to find that he did not commit any of the acts charged in the accusatory instrument and that he did not by his own conduct cause or bring about his conviction. That is, accepting the facts pled as true, the claim survives the State's motion to dismiss. Whether Mr. McDowell will be able to prove his allegations by clear and convincing evidence remains a question for trial.
Claimant's Motion for Summary JudgmentClaimant maintains that "the evidence of [Mr. McDowell's] coercion and his innocence is so clear and convincing that he should be awarded summary judgment and the case set for an inquest on damages." (NYSCEF Doc No. 94 at 5-6.) Defendant opposes the motion. Defendant argues that claimant's motion is procedurally defective, premature, and that claimant has failed to establish that no issue of fact exists.
Summary judgment is a drastic remedy, and a party seeking summary judgment must provide sufficient admissible evidence to make a prima facie showing of an absence of material issues of fact and entitlement to judgment as a matter of law. (Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) If a party fails to make a prima facie showing, summary judgment must be denied, "regardless of the sufficiency of the opposing papers." (Alvarez, 68 NY2d at 324.) If the moving party can make these showings, the burden then shifts to the opposing party to produce sufficient admissible evidence that establishes the existence of material issues of fact that would require a trial and, consequently, that moving party is not entitled to judgment as a matter of law. (Id.) However, mere conclusions, speculation, or expressions of hope are insufficient to defeat the motion. (Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533 [1991].)
When reviewing a summary judgment motion, the Court's role is not "to resolve issues of fact, but to determine whether issues of fact exist." (Garray v State of New York, UID No. 2012-032-033 [Ct Cl, Hard, J., June 29, 2012].) The evidence offered is viewed by the Court in the light most favorable to the non-moving party, giving the non-moving party the benefit where a conflicting inference can be drawn. (Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339 [2011]; see also Open Door Foods, LLC v Pasta Machs., Inc., 136 AD3d 1002, 1004-1005 [2d Dept 2016].) Summary judgment "should only be granted where there are no material and triable issues of fact." (114 Woodbury Realty, LLC v 10 Bethpage Rd., LLC, 178 AD3d 757, 760 [2d [*18]Dept 2019] [internal quotation marks omitted].) 
While it is true that CPLR 3212, unlike CPLR 3211, requires the movant to include a copy of the pleadings in support of a motion for summary judgment, it is within the court's discretion "overlook the procedural defect" if the record is sufficiently complete. (Geiger v Hudson Excess Ins. Co., 244 AD3d 104, 109 [1st Dept 2025] [internal quotation marks and citation omitted].) However, defendant's argument concerning the timing of the motion, before discovery is complete and before the Note of Issue has been filed does raise concerns for the Court. While there are certainly instances where it is appropriate to grant a motion for summary judgment (see, e.g., Fleischmann v County of Suffolk, 226 AD3d 873, 873 [2d Dept 2024] [A prima facie case of negligence is demonstrated when the rear vehicle operator strikes the rear of the vehicle stopped at a red traffic light]), this is not one of them. Particularly where, as here, claimant must prove by clear and convincing evidence that he was, in addition to being convicted of one or more felonies, sentenced to a term of imprisonment, and served all or part of the sentence, claimant must, as relevant here, prove that his judgment was reversed or vacated and the accusatory instrument dismissed on the grounds provided for in Court of Claims Act § 8-b (5) (b), that he did not commit any of the acts charged in the accusatory instrument, and that he did not cause or bring about his own conviction. (Court of Claims Act § 8-b [5].)
As discussed at length above, the Court concluded, in accepting the facts stated in his claim and its attachments as true, that Mr. McDowell's claim states facts in sufficient detail to meet the requirements of Court of Claims Act § 8-b (4). But that was pursuant to the standard for a motion to dismiss and not a motion for summary judgment.
Mr. McDowell's summary judgment motion suffers from several shortcomings. First, claimant "hereby incorporate[d] each and every fact, document, exhibit and legal argument presented" in his papers in support of his motion for summary judgment (NYSCEF Doc No. 94 at 29/26). However, that included inadmissible evidence. The Court could, for example, consider the conclusions reached in the CRU report for purposes of the motion to dismiss. However, without having established grounds for its admissibility, used in support of a motion for summary judgment (or at trial), the report constitutes inadmissible hearsay. (See Marshall, 2025 NY Slip Op 51390[U], *8.) Another deficit in claimant's motion is that claimant insists throughout his papers that he need only prove that he did not commit two of the four counts in the indictment. Again, as discussed at length above, Mr. McDowell will need to prove by clear and convincing evidence that he did not commit any of the acts charged.
Because several questions of fact remain, including central questions concerning whether Mr. McDowell can prove that he did not commit any of the acts alleged, whether he accepted the 2009 plea under duress, and on what grounds his conviction was reversed or vacated, claimant's motion for summary judgment must be denied.
Therefore, based on the above, it is hereby,
ORDERED, that defendant's motion to dismiss (M-101973) is hereby DENIED; and it is further
ORDERED, that claimant's cross-motion for summary judgment (CM-102426) is hereby DENIED.
A status conference will be scheduled with the parties to schedule deadlines to complete discovery and address any other outstanding issues.
January 2, 2026New York, New YorkSETH M. MARNINJudge of the Court of ClaimsIn rendering the decision, the Court read and considered the following papers:
1. NYSCEF Doc Nos. 33 — 39; 96 — 99 (Defendant's motion to dismiss, opposition to summary judgment, and exhibits);2. NYSCEF Doc Nos. 44 — 94; 100 — 102 (Claimant's opposition to dismissal, cross-motion for summary judgment, and exhibits);3. NYSCEF Doc Nos. 9 — 14; and4. NYSCEF Doc No. 18.

Footnotes

Footnote 1:Because the claim presents claimant's name as a mixed-case name, that is how the Court will refer to claimant throughout the decision. The exception to this will be where his name is a part of a quotation where single case was used.

Footnote 2:The Court will reference NYSCEF pagination where available. When NYSCEF pagination is unavailable, the Court will attempt to use the page numbers stamped on the original document. Where using that page number creates confusion, the Court will defer to the PDF page number.

Footnote 3:The jury found Mr. McDowell guilty of the first count. When the clerk asked the jury as to the second count, the court interjected, said "Forget it, it's in the alternative" and later informed counsel that the jury had returned a guilty verdict on the second count but that because the court had submitted the two murder charges in the alternative, he set aside the second murder count. (People v McDowell, 216 AD2d 419, 420 [2d Dept 1995] [internal quotations omitted].)

Footnote 4:Prior to trial, Mr. McDowell rejected a plea offer. Following his conviction, Mr. McDowell made several unsuccessful attempts to establish his innocence including a motion to set aside the verdict pursuant to CPL § 330.30 (3) on the ground of newly discovered evidence; a direct appeal to the Appellate Division, Second Department; an appeal of the Appellate Division's order affirming his judgment of conviction to the Court of Appeals; and a motion to set aside his sentence, pursuant to CPL § 440.20. However, it unnecessary to discuss these efforts in detail in order to resolve the motions presently before the Court.

Footnote 5:To the extent that there are discrepancies concerning dates, the Court will rely on the dates in the underlying documents.

Footnote 6:NYSCEF Doc No. 92, Exhibit PP, described as "Pre-Exoneration Motion Filed," includes a Notice of Motion that states the motion is brought pursuant to CPL 440.10 (g) and (h), newly discovered evidence and actual innocence, and an Affirmation in Support of the motion that states that "[t]he affidavit [sic] is submitted in support of the Defendant's motion" pursuant to CPL 441.10 (g), newly discovered evidence, and CPL 441.10 (b), because his plea was "the product of duress." (NYSCEF Doc No. 92 at 3, ¶ 1.) The affirmation continues, discussing coercion and instances and articles where individuals who are innocent accept a plea offer and ultimately argues that "the conviction should be vacated pursuant to CPL 440.10 (b) and (g)." (NYSCEF Doc No. 92 at 5, ¶15.)

Footnote 7:Defendant's Notice of Motion states that the motion was made pursuant to CPLR 3211 (a) (7). (NYSCEF Doc No. 33 at 1.) However, defendant's affirmation in support of its motion indicates that the motion was brought pursuant to CPLR 3211 (a) (2) (NYSCEF Doc No. 34 at 1, ¶ 2) and, in the same affirmation, describes the motion being brought pursuant to "CPLR 3212 (2), (7)." (Id. at 6, ¶ 19.) Since the substance of motion reflects that the motion was brought pursuant to CPLR 3211 (a) (7) and the State argues that Mr. McDowell's claim "fails to state a cause of action," that is how the Court will proceed.

Footnote 8:Identified in the defendant's papers incorrectly as "People v Cruz." (NYSCEF Doc No. 34 at 16, ¶ 40.)

Footnote 9:To the extent defendant is relying on People v Larock to argue that relief pursuant to § 440.10 (g) was unavailable to Mr. McDowell's because the entry of judgment was based on plea rather than "a verdict of guilty after trial," its reliance is misplaced. That is not for this Court to opine on. See discussion supra at 18.

Footnote 10:The amended claim identifies exhibit A (NYSCEF Doc No. 10) as the verdict sheet. (NYSCEF Doc No. 9 at 1, ¶ 2.) However, the indictment was attached as exhibit A and the verdict sheet was not included with the claim.

Footnote 11:For purposes of a motion to dismiss, in order to determine whether the claimant has met the pleading requirements of Court of Claims Act § 8-b and stated a cause of action, the Court will consider the claim and any attachments, including the CRU Report, included at NYSCEF Doc No. 14. However, "[a]s a hearsay document, the CRU Report cannot be used to support summary judgment in the movant's favor unless there is some grounds for admissibility." (Marshall v State of New York, 86 Misc 3d 1272[A], 2025 NY Slip Op 51390[U], *8 [Ct Cl 2025].)

Footnote 12:Defendant also argues that in 2009 Mr. McDowell pled guilty to or "admitted" to second degree criminal possession of a weapon. (See NYSCEF Doc No. 34 at 10, ¶ 29; Doc No. 96 at 2, ¶ 3.) However, the record does not support that assertion. (See NYSCEF Doc No. 37 which reflects that Mr. McDowell pled guilty only to manslaughter in the first degree ["THE CLERK: Mr. McDowell do you now plead guilty to the count of manslaughter in the first degree, a B felony under Penal Law 125.20, subsection one, in full satisfaction of the indictment? Is that what you wish to do? THE DEFENDANT: Yes. THE COURT: Very well. Defendant has been arraigned." (19:11-18); "THE COURT: The original conviction — the defendant was originally convicted on three counts and now he is of course pleading guilty to the B felony, manslaughter in the first degree, one count; correct? MR. TAUB: Correct. MR. MICHELEN: Correct." (22:17-22)].) His allocution to being "armed with a weapon" may be relevant to the discussion, it does not constitute pleading guilty to second degree criminal possession of a weapon.